DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Kimberly A. Scheiman, appeals from her convictions in the Medina County Court of Common Pleas for forgery. We affirm.
 I. {¶ 2} On February 3, 2003, Ms. Scheiman came in to Rite Aid Pharmacy in Brunswick, Ohio, to fill a prescription for 20 tablets of the narcotic Tylenol No. 3 (i.e., Tylenol with codeine), written out by Dr. William Denny Robertson, a physician at the Brunswick Immediate Care Center. Ms. Scheiman was at the medical facility earlier that evening for the treatment of an abscessed tooth. Donald Dietrich ("Dietrich"), the pharmacist on duty at Rite Aid, noticed that the prescription appeared to authorize one refill. Specifically, the prescription included Ms. Scheiman's full name, the prescribed medication, an apparent authorization of one refill demarcated by a carefully written number "1", and Dr. Robertson's signature, all written in black ink. Surrounding Ms. Scheiman's name on the prescription were her address and full name, printed in blue ink.
 {¶ 3} Because of the proximity of the Rite Aid Pharmacy to the Brunswick Immediate Care Center, Dietrich had the opportunity to handle many of Dr. Robertson's prescriptions in the past. Furthermore, because of his familiarity with these prescriptions, Dietrich knew that Dr. Robertson seldom authorized refills, and, that, unlike this refill indication, Dr. Robertson usually writes a line between the refills. Thus, Ms. Scheiman's prescription caught his eye. Dietrich phoned Dr. Robertson to verify whether he had written Ms. Scheiman's prescription to include a refill, because he knew that Dr. Robertson rarely wrote refills as an emergency room doctor. Dr. Robertson indicated to Dietrich that he had not authorized a refill on this prescription. After speaking with Dr. Robertson, Dietrich filled the prescription without the refill amount, and told Ms. Scheiman that the pharmacy "might have some people checking [the prescription] out." Dietrich then called the Brunswick Police Department.
 {¶ 4} On November 5, 2003, the Medina County Grand Jury indicted Ms. Scheiman of one count of deception to obtain a dangerous drug, in violation of R.C. 2925.22(A), a fifth degree felony; one count of forgery, in violation of R.C. 2913.31(A)(1), a fifth degree felony; and one count of forgery, in violation of R.C. 2913.31(A)(2), a fifth degree felony. Ms. Scheiman pled not guilty to all charges, and waived her right to a jury trial.
 {¶ 5} At the close of the State's case at trial, Ms. Scheiman's counsel moved for acquittal pursuant to Crim.R. 29(A). The court granted the motion as to the deception to obtain a dangerous drug charge, but denied it as to the remaining forgery charges. At the close of all the evidence, Ms. Scheiman's counsel renewed her Crim.R. 29(A) motion, which the trial court denied as well.
 {¶ 6} The court found Ms. Scheiman guilty of both counts of forgery, and sentenced her accordingly. This appeal followed.
 {¶ 7} Ms. Scheiman timely appealed, asserting two assignments of error for review. We address Ms. Scheiman's assignments of error together, as they involve similar questions of law and fact.
 II. First Assignment of Error
"The trial court erred in denying defendant-Appellant's motion for acquittal pursuant to criminal rule 29 as to both counts II And III of the indictment."
 Second Assignment of Error
"The evidence presented by the state of ohio was insufficient to sustain the guilty verdicts against defendant-appellant."
 {¶ 8} In her first and second assignments of error, Ms. Scheiman contends that the trial court erred in not granting her Crim.R. 29(A) motion for acquittal, and asserts that the evidence was insufficient to support the convictions for two counts of forgery. In her argument in support of her second assignment of error, Ms. Scheiman also asserts that her convictions are against the manifest weight of the evidence. We disagree.
 {¶ 9} As a preliminary matter, the Court observes that sufficiency of the evidence and weight of the evidence are legally distinctive issues.State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 10} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." Thompkins, 78 Ohio St.3d at 386.
 {¶ 11} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citingThompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 12} Sufficiency of the evidence is required to take a case to the jury; therefore, a finding that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Id.
 {¶ 13} In this case, Ms. Scheiman argues that the State failed to establish that she altered the prescription with the intent to defraud. Notably, Ms. Scheiman does not contest the fact that she in fact made the black marking resembling the number "1" on the refill line, but simply maintains that she accidentally put the marking on the refill line. While Ms. Scheiman disputes the fact that the "1" marking in the refill line was intentional, the State maintains that the opposite is true, given the totality of the circumstances, including the fact that Ms. Scheiman had filled other narcotics prescriptions close in time to that of the incident in question. Ms. Scheiman was convicted of forgery, in violation of R.C. 2913.31(A)(1)-(2), which states:
"(A) No person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall do any of the following:
"(1) Forge any writing of another without the other person's authority;
"(2) Forge any writing so that it purports to be genuine when it actually is spurious, or to be the act of another who did not authorize the act, or to have been executed at a time or place or with terms different from what in fact was the case, or to be a copy of an original when no such original existed[.]"
To "defraud" under the statute means to "knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." R.C. 2913.01(B).
 {¶ 14} Thus, the State was required to establish that Ms. Scheiman had the purpose to defraud, or knew that she was facilitating a fraud. See id. R.C. 2901.22 provides definitions of the requisite mental states pertinent to the forgery statute:
"(A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
"(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
Because a defendant's mental state is difficult to demonstrate with direct evidence, it may be inferred from the surrounding circumstances in the case. State v. Logan (1979), 60 Ohio St.2d 126, 131. Culpable mental states can be established by circumstantial as well as direct evidence.State v. Kincaid, 9th Dist. No. 01CA007947, 2002-Ohio-6116, citingKreuzer v. Kreuzer (2001), 144 Ohio App.3d 610, 613.
 {¶ 15} If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." State v. Daniels (June 3, 1998), 9th Dist. No. 18761, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. "Circumstantial evidence and direct evidence inherently possess the same probative value[.]" State v. Smith (Nov. 8, 2000), 9th Dist. No. 99CA007399, quoting Jenks, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the * * * fact-finding function is concerned, all that is required of the [fact finder] is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." State v. Chisolm (July 8, 1992), 9th Dist. No. 15442, quoting Jenks, 61 Ohio St.3d at 272. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. State v. Lott (1990), 51 Ohio St.3d 160,168, citing Hurt v. Charles J. Rogers Transp. Co. (1955), 164 Ohio St. 329,331. Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. Lott,51 Ohio St.3d at 168, citing Hurt, 164 Ohio St. at 331.
 {¶ 16} In the instant case, Dr. William Denny Robertson testified that he attended to Ms. Scheiman at the Brunswick Immediate Care Center. He stated that he provided her with a prescription for 20 tablets of Tylenol No. 3, but that he left the refill line blank. Dietrich's testimony regarding Dr. Robertson's general prescription authorizations corroborates Dr. Robertson's testimony that he did not authorize any refills in Ms. Scheiman's case. Dietrich also testified, that, when inquired about the refill written in black ink, Ms. Scheiman peculiarly responded that "her pen must have slipped" when she wrote her name and address, in blue ink, on the prescription. Dietrich testified that this explanation was certainly suspicious, given the two different colored inks, and that the neatness of the perfectly perpendicular vertical slash in the refill line also looked suspicious.
 {¶ 17} The State references the fact that Ms. Scheiman provided conflicting testimony at trial, thereby rendering her account of the incident unbelievable. At trial, Ms. Scheiman testified that she was not expecting Dr. Robertson to prescribe her Tylenol 3. She testified that when she got back in her truck to take the prescription to get it filled, she wrote in her name and address with a blue ink pen she found in her truck. Ms. Scheiman further testified that while she was writing with the blue ink pen, she lost the pen and then grabbed for another pen in the truck. While Ms. Scheiman asserted the truck was messy and had no working interior lights, her husband, Raymond Scheiman, testified that he keeps the interior of the truck quite clean. In any event, she testified that she began to write numbers on what she thought was another piece of paper that contained names of local dentists, and then realized that she had in fact written a number "1" on the actual prescription, in the refill line.
 {¶ 18} Ms. Scheiman fully admitted during trial that this explanation conflicted with that which she gave Dietrich at Rite Aid; she asserted that she did not believe that Dietrich recalled the situation correctly. When questioned by the court, Ms. Scheiman admitted that she knew that the prescription had the marking on the refill line before she presented it to Dietrich at Ride Aid. However, she maintained that she had no intention of deceiving anyone when she put the marking in the refill line.
 {¶ 19} Although Ms. Scheiman testified that she did not have the desire to take the Tylenol 3 Dr. Robertson prescribed, her further testimony disclosed the fact, that, approximately one week after her visit with Dr. Robertson, she had another prescription for Tylenol 3 filled at the Drug Mart Pharmacy in Brunswick, this one from a dentist. While Ms. Scheiman also testified that she flushed the Tylenol 3 from Dr. Robertson's prescription down the toilet and did not want to take the medication because of her pregnancy at that time, she also gave testimony expressing a usefulness for this same prescription, albeit for unrelated, illegal purposes. When asked why she got the prescription from Dr. Robertson on February 4, 2003, Ms. Scheiman answered that in the event she hurt her ankle or leg, she could take the Tylenol 3 for such an injury. Furthermore, Raymond testified that he witnessed her take some of this medication at home, and said with complete certainty that she did not flush it down the toilet.
 {¶ 20} Ms. Scheiman cites State v. Taylor (1997), 78 Ohio St.3d 15, 27, which states that a defendant's flight may indicate a consciousness of guilt. Ms. Scheiman seems to argue that because she did not abandon filling prescription from Rite Aid Pharmacy when Dietrich confronted her about the refill, that this by itself further demonstrates that she did not have the intent to defraud the pharmacy. While a defendant's flightmay suggest guilt in certain circumstances, it does not necessarily follow that lack of flight absolutely demonstrates a lack of the requisite mens rea.
 {¶ 21} After a careful review of the record, and upon viewing the evidence in the light most favorable to the prosecution and considering all reasonable inferences regarding Ms. Scheiman's mental state, this Court cannot conclude that the trial court lost its way and created a manifest miscarriage of justice when it found Ms. Scheiman guilty of two counts of forgery. See Otten, 33 Ohio App.3d at 340. Based upon the surrounding facts and circumstances, a finder of fact could reasonably conclude that Ms. Scheiman either had the intent to defraud in order to obtain a refill, or did so knowingly. See R.C. 2913.31; 2901.22(A) 
(B).
 {¶ 22} Although some conflicting testimony was presented as to the cause of the refill authorization on the prescription, we will not overturn the verdict because the finder of fact chose to rely on other testimony and reasonable inferences. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the [finder of fact] believed the prosecution testimony." State v. Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757. Despite an appellate court's role as a "thirteenth juror," it is primarily the finder of fact's duty to assess the credibility of witnesses. State v. DeHass (1967), 10 Ohio St.2d 230, 231. As this Court has previously noted, the finder of fact
"is able to observe the witnesses testify and can evaluate body language, voice inflection, and facial expressions. These are valuable tools for assessing credibility[,] tools which are not available to an appellate court working from the record alone. As such, a [finder of fact's] assessment of credibility is entitled to considerable deference.
"The deference that is due to a [finder of fact's] assessment of credibility is reflected in the limitation placed on an appellate court in reviewing the [finder of fact's] resolution of conflicting testimony. An appellate court does not have free reign to engage in a de novo review of the [finder of fact's] resolution of conflicting testimony." (Citations omitted.) State v. Belter (Aug. 25, 1999), 9th Dist. No. 2888-M.
 {¶ 23} In this case, the trial court as the finder of fact had the opportunity to review all of the testimony, and weigh the evidence and credibility of each witness to reconcile any conflicting evidence, whether direct or circumstantial. See Kincaid, supra; Kreuzer,144 Ohio App.3d at 613. In light of our qualified standard of review, we refuse to usurp the authority and judgment of the trial court in this instance. Thus, we conclude that Ms. Scheiman's convictions for forgery were not against the manifest weight of the evidence.
 {¶ 24} Having found that Ms. Scheiman's forgery convictions were not against the manifest weight of the evidence, we also conclude that there was sufficient evidence to support the court's verdict in this case. SeeRoberts, supra.
 {¶ 25} Accordingly, Ms. Scheiman's first and second assignments of error are overruled.
 III. {¶ 26} Ms. Scheiman's first and second assignments of error are overruled. Ms. Scheiman's convictions in the Medina County Court of Common Pleas are affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Whitmore, P.J., Slaby, J. concur