DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Jackie Robinson, appeals from his conviction and sentence in the Summit County Court of Common Pleas for theft and passing bad checks. We affirm.
 I. {¶ 2} On Thursday, April 8, 2004, Mr. Robinson opened a personal checking account, using $50, at the South Arlington Street Branch of First Merit Bank in Akron, Ohio. The first activity in the account occurred on Tuesday, April 13, 2004 at the Manchester Road Portage Lakes Branch of First Merit Bank in Akron, when Mr. Robinson deposited $100 in cash and a check in the amount of $1,900 into the account. The check, number 1418, dated April 13, 2004, was made payable to Mr. Robinson and was drawn on the U.S. Bank account of Channell M. Jones. The check was signed by "Channell Jones" and was endorsed by Mr. Robinson. At this point in time the account had a total balance of $2,050.
 {¶ 3} First Merit presented the check for payment to U.S. Bank, but the check was returned to First Merit Bank on April 16, 2004 marked "ACCOUNT CLOSED." This particular account had been opened in June 2002, but was closed in June 2003. However, prior to the return of the check, Mr. Robinson depleted all of the funds in his account at First Merit Bank. Specifically, on April 14, 2004, Mr. Robinson wrote a counter check for $100 to withdraw the money at the Copley Road First Merit Branch in Akron. Approximately 20 minutes later, Mr. Robinson withdrew another $100 at the Wooster Hawkins First Merit Branch, reducing the balance to $1,850. Then, on April 15, 2004, Mr. Robinson withdrew $500 at the Copley Road Branch. Approximately 15 minutes later, Mr. Robinson withdrew another $500 at the Wooster Hawkins Branch. Then, about 25 minutes later, Mr. Robinson withdrew the remaining account balance, $850, at the Kenmore Boulevard Branch.
 {¶ 4} In a demand letter dated April 22, 2004 and sent to Mr. Robinson via certified mail, First Merit asserted that Mr. Robinson had deposited a bad check and taken the funds. First Merit demanded that Mr. Robinson repay the $1,900, and informed him that it would institute legal proceedings against him if he did not repay the amount prior to May 6, 2004. It is uncontested on appeal that Mr. Robinson received and signed for the certified letter, and that he did not satisfy the debt on the account.
 {¶ 5} On October 12, 2004, the Summit County Grand Jury indicted Mr. Robinson, through a direct indictment, for one count of theft, in violation of R.C. 2913.02(A)(3), a fifth degree felony; and one count of passing bad checks, in violation of R.C. 2913.11, a fifth degree felony. Mr. Robinson pled not guilty to the charges.
 {¶ 6} Pursuant to trial, a jury found Mr. Robinson guilty of theft and passing bad checks. The trial court sentenced Mr. Robinson to one year of incarceration for the theft charge, and one year for the passing bad checks charge, both maximum terms, to be served consecutively. The court also ordered Mr. Robinson to make full and complete restitution of the $1,900 amount to First Merit Bank.
 {¶ 7} Mr. Robinson timely appealed, asserting two assignments of error for review.
 II. A. First Assignment of Error
"APPELLANT'S CONVICTION AND THE TRIAL COURT'S DENIAL OF THE MOTION FOR ACQUITTAL WERE AGAINST THE MANIFEST WEIGHT AND/OR SUFFICIENCY OF THE EVIDENCE."
 {¶ 8} In his first assignment of error, Mr. Robinson contends that his convictions for theft and passing bad checks were against the manifest weight of the evidence and not supported by sufficient evidence. We disagree.
 {¶ 9} As a preliminary matter, the Court observes that sufficiency of the evidence and weight of the evidence are legally distinct issues.State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 10} Crim. R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim. R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." Thompkins, 78 Ohio St.3d at 386.
 {¶ 11} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citingThompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 12} Sufficiency of the evidence is required to take a case to the jury; therefore, a finding that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *5. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Id.
 {¶ 13} Mr. Robinson primarily argues that the prosecution did not meet its burden of establishing that he had the requisite mental states, i.e., purpose and knowledge. Mr. Robinson asserts that the prosecution did not present direct evidence of mental states. However, because a defendant's mental state is difficult to demonstrate with direct evidence, it may be inferred from the surrounding circumstances in the case. State v. Logan (1979), 60 Ohio St.2d 126, 131; State v. Scheiman,
9th Dist. No. 04CA0047-M, 2005-Ohio-15, at ¶ 14 (inferring the intent to defraud). Culpable mental states can be established by circumstantial as well as direct evidence. State v. Kincaid, 9th Dist. No. 01CA007947, at *9-10, 2002-Ohio-6116, citing Kreuzer v. Kreuzer (2001),144 Ohio App.3d 610, 613.
 {¶ 14} If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "`such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.'" State v. Daniels (June 3, 1998), 9th Dist. No. 18761, at *2, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. "`Circumstantial evidence and direct evidence inherently possess the same probative value[.]'" State v. Smith (Nov. 8, 2000), 9th Dist. No. 99CA007399, at *15, quoting Jenks,
61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "`[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt.'" State v. Chisolm (July 8, 1992), 9th Dist. No. 15442, quoting Jenks, 61 Ohio St.3d at 272. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. State v. Lott (1990), 51 Ohio St.3d 160,168, citing Hurt v. Charles J. Rogers Transp. Co. (1955), 164 Ohio St. 329,331. Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. Id.
 {¶ 15} Mr. Robinson was convicted of theft and passing a bad check. R.C. 2913.02(A)(3), theft, states, "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]y deception[.]" R.C. 2913.11, passing bad checks, provides:
"(B) No person, with purpose to defraud, shall issue or transfer or cause to be issued or transferred a check or other negotiable instrument, knowing that it will be dishonored or knowing that a person has ordered or will order stop payment on the check or other negotiable instrument."
R.C. 2901.22(A) defines the culpable mental states of purpose and knowledge as follows:
"(A) A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.
"(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 16} The First Merit Bank criminal investigator assigned to this case, Roy Mosley, testified that the investigation commenced when the deposit security department at First Merit submitted to him an in-house report coupled with the returned check. Mosley testified that he became suspicious of Mr. Robinson's transactions because they exhibited a pattern indicative of "new account fraud," in which a deposit is made with a bad check and then funds are quickly withdrawn in a series of transactions at different locations before the bad check is returned, all within one or two days of the check deposit. During cross-examination, Mosley testified that he immediately recognized the Jones check, because one and one-half weeks prior to the Robinson investigation, he had conducted an investigation on an individual named Torrie Huffman, who had deposited a Jones U.S. Bank check number 1412 at a First Merit branch and then withdrew the money. Huffman had also been indicted. Mosley asserted that at least two of Jones' U.S. Bank checks had "hit the street." On re-direct, Mosley also mentioned that Mr. Robinson's transactions further suggested fraudulent activity from the mere fact that he did not deplete the account at the same location where he opened the account, at Portage Lakes, as is usually the situation in these types of cases. Mosley confirmed that the patterns in both cases were "classic example[s] of check fraud."
 {¶ 17} Micheal Coughenour from the Summit County Sheriff's Investigative Unit testified that he received a referral from Mosley on June 15, 2004 regarding Mr. Robinson. After subpoenaing U.S. Bank records, he discovered that Jones' account had been closed in June 2003. Coughenour also expressed the belief that this pattern of activity was indicative of fraud, and reiterated the same concern that Mosley had expressed regarding several transactions having been made within a short period of time and at different locations.
 {¶ 18} The authorities interviewed Jones, but she denied having any knowledge of what happened to her U.S. Bank checks. Jones was never charged.
 {¶ 19} Mr. Robinson does not deny that he made all these withdrawals at all of these different branch locations. However, he maintains that the jury should have reasonably inferred that Mr. Robinson did not have the requisite intent. However, the jury was entitled to infer as it did, as it was in the ideal position to weigh the evidence and judge the various witnesses' credibility. See State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus. Furthermore, a conviction is not against the manifest weight of the evidence simply because the jury chose to believe the prosecution's witnesses. State v.Gilliam (Aug. 12, 1998), 9th Dist. No. 97CA006757, at *5.
 {¶ 20} Based upon all of the circumstances in this case, we find that a jury could reasonably infer purpose and knowledge on Mr. Robinson's part. Thus, this Court cannot conclude that the trial court lost its way and created a manifest miscarriage of justice when it found Mr. Robinson guilty of theft and passing bad checks. See Otten, 33 Ohio App.3d at 340. Therefore, we find that Mr. Robinson's conviction was not against the manifest weight of the evidence.
 {¶ 21} Having already found that Mr. Robinson's convictions were not against the manifest weight of the evidence, we also conclude that there was sufficient evidence to support the verdicts in this case. SeeRoberts, supra.
 {¶ 22} Mr. Robinson's first assignment of error is overruled.
 B. Second Assignment of Error
"THE TRIAL COURT'S IMPOSITION OF MAXIMUM CONSECUTIVE SENTENCES AS TO BOTH COUNTS IS NOT SUPPORTED BY THE RECORD OR REQUIRED LAW." [sic]
 {¶ 23} In his second assignment of error, Mr. Robinson contends that the imposition of maximum consecutive sentences as to both counts was not supported by the record or is contrary to law. We disagree.
 {¶ 24} An appellate court may remand a matter on appeal for re-sentencing if it clearly and convincingly finds that the court's findings are unsupported by the record, or that the sentence imposed by the trial court is otherwise contrary to law. R.C. 2953.08(G)(2). Clear and convincing evidence is evidence "which will produce * * * a firm belief or conviction as to the allegations sought to be established."State v. Eppinger (1991), 91 Ohio St.3d 158, 164, quoting Cross v.Ledford (1954), 161 Ohio St. 469, 477. The applicable record to be reviewed by the appellate court shall include the following: (1) the pre-sentence investigative report; (2) the trial court record in the case in which the sentence was imposed; and (3) any oral or written statements made to or by the court at the sentencing hearing at which the sentence was imposed. R.C. 2953.08(F).
 {¶ 25} In the instant case, the trial court ordered a pre-sentence investigation. At the sentencing hearing, the court stated that it reviewed Mr. Robinson's record of prior convictions. However, our review of the record in this case reveals that the investigative report was not made part of the record on appeal. Pursuant to App. R. 9 and Loc. R. 5, an appellant bears the burden to ensure that the record necessary to determine the appeal is before the appellate court. App. R. 9(B); Loc. R. 5(A). State v. McCowan, 9th Dist. No. 02CA008124, 2003-Ohio-1797, at ¶ 6, citing State v. Williams (1995), 73 Ohio St.3d 153, 160. If the record is incomplete, an appellate court must presume that the trial court acted with regularity and with sufficient evidence to support its findings.McCowan at ¶ 6, citing State v. Miller (June 7, 2000), 9th Dist. No. 19810. Thus, in this case, we must presume the regularity of the trial court's imposition of the sentence based upon the record before it.
 {¶ 26} Mr. Robinson also argues that the sentence is contrary to law. The trial court sentenced Mr. Robinson to one year incarceration for the theft charge, and one year for the passing bad checks charge, both maximum terms, and ordered the terms to be served consecutively.
 {¶ 27} Upon a review of the sentencing hearing transcript, we observe that the court addressed Mr. Robinson's case in the context of general felony sentencing purposes, as enumerated in R.C. 2929.11. The court also considered the seriousness and recidivism factors in R.C. 2929.12, and determined that a prison term was appropriate for these fifth-degree felony convictions based on its findings that Mr. Robinson had previously served a prison term and had committed the offenses while under post release control. See R.C. 2929.13(B)(1)(g)-(h).
 {¶ 28} Mr. Robinson maintains that the trial court failed to make the requisite findings for imposing consecutive sentences per R.C. 2929.14(E)(4) at the hearing. However, we do not find any support for this assertion in the record. The hearing transcript reveals that the judge made the following findings: (1) consecutive sentences were necessary to protect the public and punish the offender; (2) the sentences are not disproportionate to the seriousness of Mr. Robinson's conduct; and (3) Mr. Robinson was under post release control at the time for a similar offense. Furthermore, the record reveals that the court complied with R.C. 2929.19(B) and R.C. 2929.14(C) by stating its reasons for imposing maximum sentences. Based upon the foregoing, we conclude that Mr. Robinson's sentences were not contrary to law.
 {¶ 29} Mr. Robinson's second assignment of error is overruled.
 III. {¶ 30} Mr. Robinson's first and second assignments of error are overruled. Mr. Robinson's conviction and sentence in the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J., Whitmore, J., concur.