DECISION AND JOURNAL ENTRY
 INTRODUCTION {¶ 1} Officer Steve Hankins of the Akron Police Department was on patrol with a state trooper on the evening of April 16, 2008, when they pulled up beside Romando Foster and Jason Pruiett, who were walking along a sidewalk near Akron City Hospital. According to Officer Hankins, when he asked the men "what's up, guys?," they drew closer to each other and a small plastic bag fell between them. He said that, because the bag appeared to contain crack cocaine, they handcuffed and searched Mr. Foster and Mr. Pruiett. While Officer Hankins said they did not find any other drugs, Mr. Foster was carrying over $2700. The Grand Jury indicted Mr. Foster and Mr. Pruiett for possession of cocaine. They moved to suppress the evidence, and the trial court granted their motions, concluding that the officers did not have reasonable suspicion to stop them. This Court vacates the trial court's decision and remands because the court's findings *Page 2 
of fact were not sufficient to allow this Court to determine whether the officers had probable cause to arrest Mr. Foster and Mr. Pruiett.
 TESTIMONY {¶ 2} Officer Hankins testified that the state trooper and he were on patrol as part of a special gun violence reduction detail when they saw Mr. Foster and Mr. Pruiett on the sidewalk. He said that, as they drove past Mr. Foster and Mr. Pruiett, the men did a "duck and turn," which is a subconscious checking of drugs or weapons to make sure they are still there, and started walking the other way. He said the trooper, who was driving, turned their car around in a driveway and pulled up next to the men. Officer Hankins said that he shined his flashlight on the men and said "what's up guys?" According to the officer, Mr. Foster and Mr. Pruiett "bunched up together right on the sidewalk pretty quick and then something fell from the middle of the two of them." He described the item that fell as a small plastic bag. He said he stepped out of the car and approached the men and saw that the bag, which was lying on the sidewalk, appeared to contain crack cocaine. The trooper and he, therefore, arrested Mr. Foster and Mr. Pruiett and searched their pockets. Mr. Foster had $2753.
 {¶ 3} According to Mr. Foster, he was at his girlfriend's house when he saw Mr. Pruiett walking down the sidewalk. Because he had not seen Mr. Pruiett in a long time, he walked over and starting talking with him. Mr. Foster said that, as Mr. Pruiett and he were walking together, he saw a state police car drive by. He watched it turn around in a driveway and come back and stop. Mr. Foster said an officer got out of the car, approached them, shined a flashlight in their faces, and asked "what are you doing?" and "[w]here you about to go?" He denied that he or Mr. Pruiett had a bag, that a bag fell to the ground, or that the officers found a bag on the ground. He said he was going to use the money he had in his pocket to rent an apartment. *Page 3 
 {¶ 4} Mr. Foster and Mr. Pruiett moved to suppress the evidence seized by the police, arguing that the officers did not have probable cause to stop and search them. The trial court determined that a stop had occurred because Mr. Foster and Mr. Pruiett "would not reasonably have supposed that they were free to leave." It found that Mr. Foster "did not feel free to depart" and that the officers would not have permitted Mr. Foster and Mr. Pruiett to have ignored their inquiry and continue walking. It concluded that "[a] Highway Patrol cruiser on an Akron side street after dark, turning around intentionally so that the police officers could pull up and inquire as to the Defendants' conduct, with a flashlight shined at their faces, creates circumstances that reasonable people would not feel free to ignore." The court further determined that the officers did not have a reasonable basis to suspect that Mr. Foster and Mr. Pruiett were engaged in criminal activity. In particular, it found that they had not done a "duck and turn." According to the trial court, "[w]hile [Mr. Foster and Mr. Pruiett] may have patted their pockets, they did not `turn' in the sense of changing their direction. They simply turned their heads to follow the Highway Patrol cruiser, as anyone might do." Because the officers did not have reasonable suspicion for the stop, the court granted Mr. Foster and Mr. Pruiett's motions. The State has appealed, assigning one error regarding whether the trial court incorrectly granted the motions to suppress.
 MOTIONS TO SUPPRESS {¶ 5} A motion to suppress evidence presents a mixed question of law and fact. State v. Burnside, 100 Ohio St. 3d 152, 2003-Ohio-5372, at ¶ 8. A reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." Id., but seeState v. Metcalf, 9th Dist. No. 23600, 2007-Ohio-4001, at ¶ 14
(Dickinson, J., concurring). The reviewing court "must then independently determine, without deference to the conclusion of the *Page 4 
trial court, whether the facts satisfy the applicable legal standard."Burnside, 2003-Ohio-5372, at ¶ 8.
 {¶ 6} The initial question is whether Officer Hankins seized Mr. Foster and Mr. Pruiett when he asked them what they were doing. "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." Florida v. Royer, 460 U.S. 491, 497 (1983). "If there is no detention — no seizure within the meaning of the Fourth Amendment — then no constitutional rights have been infringed." Id. at 498. "[A] person has been `seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."California v. Hodari D., 499 U.S. 621, 627-28 (1991) (quoting UnitedStates v. Mendenhall, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.)). "If a reasonable person would feel free to terminate the encounter, then he or she has not been seized." United States v.Drayton, 536 U.S. 194, 201 (2002). Circumstances that might indicate a seizure, even when the person had not attempted to leave, include "threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." Mendenhall, 446 U.S. at 554
(opinion of Stewart, J.).
 {¶ 7} This Court's review is hindered by the fact that the trial court did not make complete findings of fact. Although the court recounted what Officer Hankins and Mr. Foster said, it did not reconcile the differences in their testimony and make findings about what it believed happened. In particular, it did not state whether it found that Officer Hankins was still *Page 5 
in his car when he questioned Mr. Foster and Mr. Pruiett or whether he was standing in front of them.
 {¶ 8} Even construing the facts in a light most favorable to Mr. Foster and Mr. Pruiett, they were not "seized" within the meaning of the Fourth Amendment when Officer Hankins asked his question. According to Mr. Foster, the patrol car drove past Mr. Pruiett and him, turned around, and pulled up alongside them. Officer Hankins "immediately . . . hopped out of the car," he "mov[ed] forward" "physically in [Mr. Foster's] direction," got "in [Mr. Foster's] face," "had [a] flashlight in [Mr. Foster's] face," and asked him "what are you doing?"
 {¶ 9} Just because Officer Hankins approached Mr. Foster and Mr. Pruiett from the front and was standing face to face with them, does not mean he seized them. See City of Akron v. Harvey, 9th Dist. No. 20016,2000 WL 1859838 at *3 (Dec. 20, 2000) (concluding defendant was not seized even though two uniformed, weapon-carrying officers were standing in front of her on a sidewalk at night). Specifically, there is no evidence that Officer Hankins blocked their path. Although he was standing in front of them, Mr. Foster said that the sidewalk was "five or six feet wide." Furthermore, although Mr. Foster said that Officer Hankins shined a flashlight in his face, he agreed that it was appropriate for the officer to be using a flashlight because it was dark and the officer "really [could]n't see anything without a flashlight." This Court concludes that, considering all of the circumstances, a reasonable person would have felt that he was able to walk away from Officer Hankins.
 {¶ 10} While Officer Hankins's initial inquiry may not have constituted a seizure, according to Officer Hankins, he and the trooper arrested Mr. Foster and Mr. Pruiett after a plastic bag fell between them containing what appeared to be crack cocaine. Mr. Foster denied that he or Mr. Pruiett dropped a bag or that a bag was found in their vicinity. The trial court did *Page 6 
not determine which testimony was credible. If Mr. Foster or Mr. Pruiett dropped a bag of cocaine in plain view of the officers, the officers had probable cause to arrest them. In addition, under those circumstances, the court would have to determine whether Mr. Foster and Mr. Pruiett had a reasonable expectation of privacy in the bag. State v. Freeman,64 Ohio St. 2d 291, paragraph two of the syllabus (1980) ("A defendant has no standing under the Fourth Amendment . . . to object to a search and seizure of property that he has voluntarily abandoned."). If, however, there was no bag of cocaine, then it is unlikely that the arrests of Mr. Foster and Mr. Pruiett were supported by probable cause. Accordingly, while the State's assignment of error is overruled, the trial court's decision is vacated, and this matter is remanded so the trial court can make complete findings of fact.
 CONCLUSION {¶ 11} The State's assignment of error is overruled. The trial court's judgment is vacated, and this matter is remanded for further proceedings consistent with this opinion.
Judgment vacated, and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the *Page 7 
period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed equally all parties
WHITMORE, J., CONCURS.