[Cite as *State v. Walker*, 2011-Ohio-5779.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 25744 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| NATHANIEL D. WALKER | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 10 08 2142 |

DECISION AND JOURNAL ENTRY

Dated: November 9, 2011

Per Curiam.

**{¶1}** Defendant-Appellant, Nathaniel Walker, appeals from his conviction in the Summit County Court of Common Pleas. This Court affirms.

I

**{¶2}** On July 27, 2010 at approximately 12:30 p.m., Akron Police Officer James Cunningham and retired Officer Richard Mullins were patrolling in the area of Pondview Avenue. The area had seen a rash of recent burglaries, during which various items, including firearms, were taken from homes while the occupants were away. The modus operandi of those burglaries was that the suspects would knock on the door, wait a few minutes, and kick in the door if no one answered. The suspects often chose to enter the rear of a home where they could not be seen.

**{¶3}** As the officers were patrolling, they observed Mr. Walker walking alone, wearing a black, nylon backpack. Officer Cunningham, who was driving the police cruiser, wanted to

keep an eye on Mr. Walker because he knew that Mr. Walker had been arrested for burglaries in the past. After Mr. Walker crossed Newton Street, he joined a group of four other males at the corner of Newton Street and Sobul Avenue. Officer Cunningham was familiar with two of the other males and knew that they had been previously arrested for burglary. Although Officer Cunningham was interested in Mr. Walker, he did not have a reason to stop him at that time, so he left the area for several minutes and circled around the block to slowly begin patrolling Sobul Avenue, looking up driveways and into backyards. When the officers reached the end of Sobul Avenue, they observed Mr. Walker's group congregating at the back door of a home at 1228 Pondview. When the group saw the police car approach, they began to quickly walk away. Officer Cunningham immediately notified dispatch that he believed he had interrupted a burglary in progress and requested backup because he and Officer Mullins were outnumbered.

{¶4} Officer Cunningham drove around the block where he observed the group emerge onto Pondview Avenue from a home directly adjacent to 1228 Pondview. Officer Cunningham exited the cruiser, stopped the group, and began to question them, asking what they were doing and where they were going. One of the group responded that they were utilizing a shortcut behind the buildings on Pondview. Officer Cunningham did not believe him because he had just observed the group standing at the back door of 1228 Pondview.

{¶5} After questioning the group, Officer Cunningham noticed that Mr. Walker was no longer wearing the black backpack. When asked about the location of the backpack, Mr. Walker responded that he had taken it home. Officer Cunningham concluded that Mr. Walker was being untruthful because he lived too far away to have made a trip there and back in the time that had transpired. Shortly thereafter, Mr. Walker told Officer Cunningham he would never find the backpack.

{¶6}    After backup arrived, Officer Cunningham placed Mr. Walker in the cruiser and walked over to the rear of 1228 Pondview to further investigate.  He noticed several footprints on the back door, consistent with an attempted forced entry.  He and several of the other officers then began to search the weeded area behind the houses and discovered a set of keys from a Buick automobile and the backpack.  One of the items the backpack contained was an unloaded .380 semi-automatic pistol.  The serial number had been filed off the pistol.  Officer Cunningham was also aware that Buick keys were recently stolen.

{¶7}    After finding the backpack, its contents, and the set of keys, Officer Cunningham placed Mr. Walker under arrest.   Shortly thereafter, Mr. Walker's mother arrived on the scene and identified the backpack as belonging to Mr. Walker.  The officers overheard Mr. Walker tell his mother that "[t]hey caught me with a gun, but don't worry, it's my first time."

{¶8}    Mr. Walker was indicted for tampering with evidence in violation of R.C. 2921.12(A)(1), carrying concealed weapons in violation of R.C. 2923.12(A)(2), possessing a defaced firearm in violation of R.C. 2923.201(A)(2), and having weapons while under disability in violation of R.C. 2923.13(A)(1).   On September 15, 2010, Mr. Walker filed a motion to suppress.  The trial court held a hearing on Mr. Walker's motion to suppress on October 7, 2010 and denied the motion on October 13, 2010.  A jury trial took place on October 27, 2010.  The jury found Mr. Walker guilty of tampering with evidence, but not guilty of the remaining charges.  The trial court sentenced Mr. Walker to a term of two years in prison.

{¶9}    Mr. Walker now appeals from his conviction and raises three assignments of error for our review.

II

Assignment of Error Number One

"THE UNLAWFUL SEIZURE OF APPELLANT BY POLICE VIOLATED HIS
4TH AMENDMENT RIGHTS; THEREFORE, ALL EVIDENCE
DISCOVERED AS A RESULT OF SAID SEIZURE SHOULD HAVE BEEN
EXCLUDED FROM TRIAL AS FRUIT OF THE POISONOUS TREE."

{¶10}  In his first assignment of error, Mr. Walker argues that the trial court erred in

denying his motion to suppress evidence because the police lacked reasonable suspicion to

institute an investigatory stop.  We disagree.

{¶11}  The Ohio Supreme Court has held that:

"Appellate review of a motion to suppress presents a mixed question of law and
fact. When considering a motion to suppress, the trial court assumes the role of
trier of fact and is therefore in the best position to resolve factual questions and
evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357,
366. Consequently, an appellate court must accept the trial court's findings of fact
if they are supported by competent, credible evidence. *State v. Fanning* (1982), 1
Ohio St.3d 19.  Accepting these facts as true, the appellate court must then
independently determine, without deference to the conclusion of the trial court,
whether the facts satisfy the applicable legal standard. *State v. McNamara* (1997),
124 Ohio App.3d 706."  *State v. Johnson* (Aug. 10, 2011), 9th Dist. No. 25525,
2011-Ohio-3941, at ¶5, quoting *State v. Burnside*, 100 Ohio St.3d 152, 2003-
Ohio-5372, at ¶8.

Accordingly, this Court reviews the trial court's factual findings for competent, credible

evidence and considers the court's legal conclusions de novo. *State v. Conley*, 9th Dist. No.

08CA0009454, 2009-Ohio-910, at ¶6, citing *Burnside* at ¶8.

{¶12}  "A seizure occurs when an individual is detained under circumstances in which a

reasonable person would not feel free to leave the scene[. Therefore,] both an investigatory stop

and an arrest constitute 'seizures' within the meaning of the Fourth Amendment."  *State v.

Synder*, 9th Dist. No. 06CA0018-M, 2006-Ohio-6911, at ¶13.  Likewise, the Supreme Court has

noted that "not all seizures of the person must be justified by probable cause to arrest for a

crime." *Florida v. Royer* (1983), 460 U.S. 491, 498. "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez* (1981), 449 U.S. 411, 417. "[R]easonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White* (1990), 496 U.S. 325, 330. Reasonable suspicion requires only that the officer "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *Terry v. Ohio* (1968), 392 U.S. 1, 21.

> "The Ohio Supreme Court has identified certain specific and articulable facts that would justify an investigatory stop by way of reasonable suspicion, factors which fall into four general categories: (1) location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances. No single factor is dispositive; the decision must be viewed based on the totality of the circumstances." *State v. White*, 9th Dist. No. 05CA0060, 2006-Ohio-2966, at ¶16, citing *State v. Bobo* (1988), 37 Ohio St.3d 177, 178-80.

{¶13} Mr. Walker argues that at the time the police seized him and subsequently placed him in the cruiser, they did not have reasonable suspicion to believe that he was, or was about to be, engaged in criminal activity. We disagree.

{¶14} Detective Cunningham, who had sixteen years of experience as a police officer, was the only witness to testify at the suppression hearing. Detective Cunningham testified that there had been a recent string of burglaries in the area and that he knew Mr. Walker, as well as some members of the group he was with, had been previously arrested for burglaries. Despite this knowledge, Officer Cunningham acknowledged that he initially had no reason to stop Mr. Walker or the group. Nonetheless, he opted to continue to observe the group. When the officers reached the end of Sobul Avenue, they observed Mr. Walker's group congregating at the back door of a home at 1228 Pondview. When the group saw the police car approach, they began to quickly walk away. Officer Cunningham immediately notified dispatch that he believed he had

interrupted a burglary in progress and requested backup. At that point, Detective Cunningham, "circled the block real quick just as all five were coming from behind the houses. We jumped out, had the males stop, waiting for the other units to arrive." It was at this point that Detective Cunningham noticed that Mr. Walker no longer had the backpack he was previously carrying.

{¶15} Given the totality of the circumstances presented, we conclude that the actions taken by the officers in initiating contact with Mr. Walker constituted an investigatory stop. The officers were admittedly following Mr. Walker looking to see if there was a reason to stop him. They did not merely approach the group to see if they were willing to answer questions. The officers pulled up to the group in a police car, got out and "had the males stop." As noted above, "[a] seizure occurs when an individual is detained under circumstances in which a reasonable person would not feel free to leave the scene[.]" *Synder* at ¶13. We cannot say that a reasonable person in Mr. Walker's circumstances would have felt free to leave. While this case presents a close call, we agree that the officers had reasonable suspicion to initiate the investigatory stop.

{¶16} In support of his argument to suppress evidence, Mr. Walker primarily relies upon *Brown v. Texas* (1979), 443 U.S. 47; however, *Brown* is distinguishable from the instant matter. In *Brown,* the appellant was observed walking in the opposite direction of another individual in a high crime, public area. Id. at 49. The appellant was stopped and refused to identify himself. Id. at 48-49. The appellant was then arrested for violating a Texas statute under which it is a criminal act for a person to refuse to give his name and address to a police officer who has lawfully stopped that person. Id. at 49. In concluding that the officer lacked reasonable suspicion to stop the appellant and hence that the stop was unlawful, the United States Supreme Court noted that there was no evidence that the appellant was involved in criminal conduct, nor

could the officer point to any objective facts that would support the officer's statement that the appellant appeared suspicious. Id. at 51-52.

{¶17} Here, unlike *Brown*, the stop was lawful. The officer was patrolling in an area of homes that were recently the subject of burglaries. Mr. Walker was initially observed walking alone with a black backpack. Shortly thereafter, the officer noticed Mr. Walker and four other individuals congregated at the back door of a house in the area of the recent burglaries. The officer testified that when the individuals in the group saw him, they quickly walked away. However, they did not exit the property via the driveway; instead they proceeded behind other homes and toward the street, an act which would arouse some further suspicion. Unlike the officer in *Brown*, the officer in the instant matter was able to point to specific facts which taken together suggest that Mr. Walker was engaged in, or was about to be engaged in criminal activity. See *Cortez*, 449 U.S. at 417. Further, Mr. Walker, unlike the appellant in *Brown*, was seen in the back of a private residence as opposed to a public alley.

{¶18} Accordingly, we conclude that *Brown* is distinguishable and that the officer in the instant matter did possess the reasonable suspicion necessary to initiate a brief investigatory stop as contemplated by *Terry*. See *Terry*, 392 U.S. at 21. The trial court did not err in denying Mr. Walker's motion to suppress, and his first assignment of error is overruled.

Assignment of Error Number Two

"THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR TAMPERING WITH EVIDENCE."

{¶19} In his second assignment of error, Mr. Walker argues that his conviction is based on insufficient evidence. We disagree.

{¶20} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks* (1991), 61 Ohio St.3d 259, 274. Furthermore:

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386.

"In essence, sufficiency is a test of adequacy." *Thompkins*, 78 Ohio St.3d at 386.

{¶21} Mr. Walker was convicted of tampering with evidence in violation of R.C. 2921.12 (A)(1), which provides in pertinent part that:

> "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall *** [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]"

Pursuant to R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature."

{¶22} Thus, the question before this Court, based upon Mr. Walker's argument, is whether Mr. Walker concealed the backpack "knowing that an official proceeding or investigation [wa]s in progress, or [wa]s about to be or likely to be instituted[.]" R.C. 2921.12(A)(1). Officer Mullins testified at trial that Mr. Walker was wearing the backpack when he was standing behind 1228 Pondview, that the group walked away immediately upon spotting the cruiser, and that Mr. Walker was not wearing the backpack when he was stopped in the street. In addition, the testimony of a juvenile parole officer revealed the following additional

facts: (1) Mr. Walker was on parole at the time of the incident; (2) Mr. Walker had been informed of the rules he was required to follow while on parole; (3) Mr. Walker was in violation of his parole at the time of the incident; (4) Mr. Walker was directly informed of his violations, as well as the date of a hearing on the violations; (5) Mr. Walker failed to attend the hearing and a bench warrant had been issued for his arrest; and (6) Mr. Walker failed to communicate with his parole officer following the hearing and prior to his arrest in this matter.

{¶23} We conclude that sufficient evidence was presented to establish that Mr. Walker violated R.C. 2921.12(A)(1). Based upon on the facts presented, and when viewed in a light most favorable to the prosecution, a reasonable trier of fact could conclude that Mr. Walker knew that an official investigation "[wa]s about to be or likely to be instituted" and concealed the backpack containing the gun which could have been used in the investigation against him. R.C. 2921.12(A)(1). In light of the evidence that Mr. Walker knew he was in violation of his parole and that he failed to appear at a court hearing on that violation, it is reasonable to infer that Mr. Walker knew an official investigation "[wa]s about to be or likely to be instituted" when he was spotted by the officers. R.C.2921.12(A)(1). Accordingly, Mr. Walker's second assignment of error does not have merit and is overruled.

Assignment of Error Number Three

"APPELLANT'S CONVICTION FOR TAMPERING WITH EVIDENCE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL."

{¶24} In his third assignment of error, Mr. Walker argues that his conviction is against the manifest weight of the evidence. Specifically, he argues that his version of the facts is substantially more plausible than the State's account. We disagree.

**{¶25}** When considering a manifest weight argument, this Court:

"[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

**{¶26}** A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *Thompkins*, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175; see, also, *Otten*, 33 Ohio App.3d at 340.

**{¶27}** Mr. Walker admits that the State's account was believable. Yet, he maintains that his presentation of the evidence was more believable because it accounts for possession of the backpack, and therefore, the pistol, at all times relevant to the charge, whereas the State's version allegedly does not. Mr. Walker points to testimony by Officer Cunningham on cross-examination wherein he admitted it was possible that, during the five or six minutes he was patrolling Newton Street and Sobul Avenue, any one of the members of the group could have concealed the pistol on his person and placed it in the backpack behind 1228 Pondview. Additionally, Officer Cunningham stated that there was a window of at least thirty seconds between the time the group went behind the adjacent building at 1224 Pondview to the time they emerged onto the street. He testified that it would only take a "few seconds" to "take a gun out of your pants, throw it into a backpack, and then throw it into the weeds." Based on that

testimony, Mr. Walker argues that he presented a substantially more plausible version of the facts which established that he tossed the backpack in the weeds prior to meeting the other individuals behind 1228 Pondview, and that another member of the group, knowing the location of the backpack, placed the pistol in the backpack without his knowledge. We find no merit to Mr. Walker's argument.

{¶28} While Officer Cunningham admitted it was possible that somebody could have put a gun in the backpack and thrown it in the weeds between the time the group moved away from behind 1228 Pondview and into the street, he also said that scenario was unreasonable because of the short length of time involved. Further, the testimony revealed that due to the construction of the backpack, it was not possible to put anything inside of it when it was being worn; thus, in order to put something in the backpack, the person would have to first take it off, which makes Mr. Walker's version of events even less likely given the time constraints involved. Moreover, both Mr. Walker and his mother identified the backpack as belonging to Mr. Walker, providing circumstantial evidence that anything inside of it would belong to Mr. Walker. Despite Mr. Walker's alternative view of the events, the jury chose to believe the State's version of the events. After reviewing the entire record, we cannot say the jury was unreasonable in the conclusions it reached.

{¶29} Based on the foregoing evidence, we conclude that the jury did not lose its way in convicting Mr. Walker of tampering with evidence. Mr. Walker's argument that his conviction is against the manifest weight of the evidence is without merit, and his third assignment of error is overruled.

III

**{¶30}** Mr. Walker's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

BELFANCE, P. J.
MOORE, J.
CONCUR

WHITMORE, J.
CONCURS IN JUDGMENT ONLY, SAYING:

{¶31} I write separately with respect to the first assignment of error. In concluding that there was reasonable suspicion to justify the stop, the trial court considered Mr. Walker's untruthful responses to the officer's questions as supportive of that determination and denoted the stop as occurring subsequent to those responses when Mr. Walker was detained in the cruiser. I would agree with the trial court's resolution.

{¶32} The majority concludes that the actions taken by the officers in initiating contact with Mr. Walker when they met the group in the street constituted a seizure for Fourth Amendment purposes. In support of that conclusion, the majority states that "[t]he officers were admittedly following Mr. Walker looking to see if there was a reason to stop him. They did not merely approach the group to see if they were willing to answer questions. The officers pulled up to the group in a police car, got out and 'had the males stop.'"

{¶33} "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry v. Ohio* (1968), 392 U.S. 1, 19, fn.16. "Indicia of a seizure, even where the person did not attempt to leave, include 'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *State v. Lawson*, 9th Dist. No. 21227, 2003-Ohio-1299, at ¶13, quoting *United States v. Mendenhall* (1980), 446 U.S. 544, 554. "The encounter remains consensual even if the officer asks questions, requests to examine an individual's identification, and asks to search the person's belongings, provided that the officer does not convey that compliance is required." *State v. Curtis*, 2d Dist. No. 23895, 2011-Ohio-1277, at ¶19, citing *State v. Taylor* (1995), 106 Ohio App. 3d 741, 748.

{¶34} In my view, the record from the suppression hearing is somewhat murky and simply does not establish, under the totality of the circumstances, that Walker was seized for Fourth Amendment purposes when the group was stopped in the street, prior to responding to the officer's questions. At the time, the officers were outnumbered five against two and were waiting for backup to arrive for safety. Officer Cunningham testified that he did not activate the cruiser's lights or siren, and did not "yell or anything like that[.]" There is no evidence that the officers removed their weapons from their holsters or otherwise displayed them in a threatening manner. There is no evidence that the officers blocked the group from moving or told them they could not leave unless they answered questions. There is no evidence of record that the officers touched the group in any manner. Mr. Walker contends in his brief that Officer Cunningham ordered the group to place their hands on the cruiser and that this conduct constituted a sufficient show of authority intended to impede their movement. However, in support of his argument, Mr. Walker cites to testimony presented at trial rather than testimony presented during the suppression hearing. There was no testimony presented at the suppression hearing that Mr. Walker was asked to place his hands on the cruiser. Thus, the testimony he cites had no bearing on the trial court's decision to deny the motion and cannot be taken into consideration on appeal. Furthermore, Officer Cunningham testified that "basically this is a field interview situation" and there was "nobody detained" until he had enough units on the scene. Officer Cunningham also testified that upon hearing Mr. Walker's untruthful responses regarding the location of the backpack, he placed Mr. Walker in the back of the cruiser "because I did not want him to leave the scene." Thus, it is rational to infer that until Mr. Walker was placed in the cruiser, Officer Cunningham had not tried to prevent Mr. Walker from leaving and understood that Mr. Walker may have felt free to leave.

{¶35} In at least two previous cases with similar sets of facts, this Court concluded that the stop at issue did not exceed the bounds of a consensual encounter, even though the officers stopped the suspects with the intent to ask questions based, in part, on observation of suspicious behavior. See *State v. Foster*, 9th Dist. No. 24349, 2009-Ohio-840, at ¶2, 8-9 (officers observed defendants do a "duck and turn," i.e., subconscious checking of drugs or weapons; court concluded defendants not seized when officers stepped out of the cruiser, stopped them on sidewalk, stood in front of them only five or six feet away, shined flashlights in their faces, and asked what they were doing and where they were about to go); *Akron v. Harvey* (Dec. 20, 2000), 9th Dist. No. 20016, at *2-3 (two uniformed, armed officers patrolling at night in area of high drug activity and prostitution stopped defendant after she accelerated her pace; court concluded defendant was not seized even though officers were standing in front of her on a sidewalk at night with the intent to ask her some questions and complete a field interview).

{¶36} Accordingly, in view of all the circumstances surrounding this particular incident, I would conclude that the encounter did not amount to an investigatory detention until after the questioning when Mr. Walker was placed in the cruiser. Having so concluded, I would hold that it was appropriate for the trial court to rely on Mr. Walker's untruthful responses in assessing whether there was reasonable suspicion to justify the seizure. As such, I concur in judgment only as to the first assignment of error.

APPEARANCES:

THOMAS M. DICAUDO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.