[Cite as *State v. Boggs*, 2020-Ohio-616.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

v.

JAMIE L. BOGGS

    Appellant

C.A. No.      19CA011453

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    18CR097844

DECISION AND JOURNAL ENTRY

Dated: February 24, 2020

CALLAHAN, Presiding Judge.

{¶1} Defendant-Appellant, Jamie Boggs, appeals from his convictions in the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2} Late one evening in January, the police received two calls, approximately one hour apart, about gunshots having been fired in a residential area. Several officers reported to the area to investigate, but were unable to locate the source of the gunshots. One of those officers, Officer James Wise, was patrolling the same area about two hours later when he glanced down a side street and saw a pick-up truck heading toward him. The truck caught his attention because the driver was operating it without headlights despite the pitch-black conditions. Officer Wise decided to turn around and wait for the truck. As soon as the truck reached the intersection, however, it turned away from his cruiser and quickly accelerated in the opposite direction. Officer Wise then activated his lights and attempted to stop the truck.

{¶3}    The driver of the truck led Officer Wise on a brief chase through the neighborhood and struck a car and sign along the way.  The chase ended when the truck crashed into a fire hydrant, and Officer Wise arrested the driver and his passenger, Mr. Boggs.  While searching the truck at the scene, the police discovered a gun case from which the firearm appeared to be missing.  Officer Wise then questioned Mr. Boggs about the gun, and he admitted that he had thrown it from the truck's window during the chase.  The police recovered the gun after Mr. Boggs led them back to the area where he had thrown it.

{¶4}    Mr. Boggs was indicted on each of the following counts: (1) tampering with evidence and an attendant firearm specification; (2) receiving stolen property and an attendant firearm specification; and (3) improperly handling a firearm in a motor vehicle.  The State later dismissed the count for receiving stolen property, and Mr. Boggs went to trial on his remaining counts.  At the conclusion of his trial, a jury found him guilty, and the court sentenced him to a total of one year and nine months in prison.

{¶5}    Mr. Boggs now appeals from his convictions and raises three assignments of error for review.  Because his first and second assignments of error concern much of the same testimony and evidence, this Court consolidates those assignments of error for ease of review.

II.

**ASSIGNMENT OF ERROR NO. 1**

THE TRIAL COURT ERRED AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE BY FINDING JAMIE L. BOGGS GUILTY OF TAMPERING WITH EVIDENCE WITH A GUN SPECIFICATION[.]

**ASSIGNMENT OF ERROR NO. 2**

THE JURY IN THE TRIAL COURT ERRED AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE WHEN IT FOUND THE DEFENDANT-APPELLANT, JAMIE L. BOGGS, GUILTY OF TAMPERING

WITH EVIDENCE AND IMPROPER HANDLING OF A FIREARM IN A
MOTOR VEHICLE AND WITH A GUN SPECIFICATION.

{¶6} In his first and second assignments of error, Mr. Boggs argues that his convictions for tampering with evidence and improperly handling a firearm in a motor vehicle are based on insufficient evidence and are against the manifest weight of the evidence. For the following reasons, this Court rejects his arguments.

{¶7} Initially, this Court notes that Mr. Boggs has addressed both the adequacy of the State's evidence and the persuasiveness of its evidence in a single analysis without attempting to distinguish between the two concepts. Yet, "sufficiency and manifest weight are two separate, legally distinct arguments." *State v. Vicente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20. The two concepts should be analyzed separately, lest this Court misinterpret an argument or be forced to disregard it entirely for lack of analysis. *See, e.g., State v. Messer*, 9th Dist. Summit No. 28750, 2018-Ohio-5117, ¶ 19. With that in mind, "this Court has attempted to untangle [Mr. Boggs'] arguments in order to [separately] address them." *State v. Taylor*, 9th Dist. Summit No. 28746, 2018-Ohio-2921, ¶ 26.

**Sufficiency of the Evidence**

{¶8} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009-Ohio-6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). For purposes of a sufficiency analysis, this Court must view the evidence in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is

sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

{¶9} Tampering with evidence occurs when a person, "knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, * * * [a]lter[s], destroy[s], conceal[s], or remove[s] any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation * * * ." R.C. 2921.12(A)(1). "A person acts purposely when it is [his] specific intention to cause a certain result * * *." R.C. 2901.22(A). A person acts knowingly, regardless of purpose, when [he] is aware that [his] conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when [he] is aware that such circumstances probably exist. R.C. 2901.22(B). When examining whether a person knew an official investigation was "likely to be instituted," R.C. 2901.22(A), "[l]ikelihood is measured at the time of the act of alleged tampering." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 19. Nevertheless, "the intent required by R.C. 2921.12(A)(1) can be inferred by the defendant's words, actions, and demeanor after a crime has been committed." (Emphasis omitted.) *State v. Price*, 9th Dist. Summit No. 28291, 2017-Ohio-4167, ¶ 18.

{¶10} A person commits the offense of improperly handling a firearm in a motor vehicle if he "knowingly transport[s] or [has] a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." R.C. 2923.16(B). The State may prove that a person knowingly transported or had a loaded firearm by setting forth evidence that the person had actual or constructive possession of the firearm. *See State v. Coleman*, 9th Dist. Summit Nos. 28640, 28641, 2018-Ohio-1923, ¶ 23-27.

{¶11} Officer Wise testified that his station received calls around 9:30 and 10:30 p.m. in reference to gunshots having been fired in a residential area. He and other officers patrolled the area following the 10:30 p.m. call, but did not observe any suspicious activity. Officer Wise then returned to the area around 1:50 a.m. while on patrol. At that time, he spotted the pick-up truck in which Mr. Boggs was a passenger. He passed the truck on its approach to a t-intersection and testified that it caught his attention because its headlights were off. Once he passed by the intersection, Officer Wise decided to turn around and wait for the truck to pull out. As soon as the truck arrived at the intersection, however, it turned away from his cruiser and "took off." He then activated his overhead lights and gave chase.

{¶12} Officer Wise testified that the driver of the truck ignored his attempts to initiate a traffic stop. The truck continued to accelerate until it reached the next intersection, at which point it slowed, turned northbound, and quickly accelerated again. The street on which the truck had turned resembled a horseshoe and, as the truck approached a wooded area at the top of the horseshoe, it temporarily drove off the right side of the road. The driver then navigated the truck back onto the road, completed the bend in the horseshoe, and headed southbound "pedal to the metal." The chase ended when the truck turned at the next intersection, struck a parked car, hit a sign, and collided head on with a fire hydrant. Officer Wise estimated that the entire chase lasted about 30 seconds and spanned the length of around five city blocks. At its conclusion, Officer Wise arrested both the driver and Mr. Boggs.

{¶13} Once backup officers arrived, Officer Wise placed Mr. Boggs in another officer's cruiser, Mirandized him, and asked him several questions. He testified that, the first time he questioned Mr. Boggs, he asked him what he and the driver had been doing and whether there was anything illegal in the truck. Mr. Boggs replied that they had just been "joyriding, hanging

out, something along those lines," and he was not aware of anything illegal in the truck. Another officer was inventorying the truck on scene, however, and soon advised Officer Wise that he had found a gun case in the cabin. The case contained two magazines and bore the serial number of a stolen firearm, but the firearm itself was missing. Accordingly, Officer Wise went to have a second conversation with Mr. Boggs.

{¶14} Officer Wise stated that, at first, Mr. Boggs claimed not to know anything about the gun. Officer Wise then decided to tell him that the driver had attributed the gun to him. According to Officer Wise, Mr. Boggs remained silent for about 20 seconds before admitting that he had thrown the gun from the truck's window. Mr. Boggs then agreed to show the officers where he had thrown the gun. Officer Wise testified that Mr. Boggs led them to a wooded area at the top of the horseshoe street where the truck had temporarily driven off the road. After searching for the gun without success, officers called in a K-9 unit and were able to locate it. There was testimony that the gun was a six-shot revolver and was fully loaded upon recovery. There also was testimony that both the driver and Mr. Boggs tested positive for gunshot residue.

{¶15} Mr. Boggs argues that his tampering conviction is based on insufficient evidence because the State failed to prove that he threw the gun from the truck either (1) because he knew an investigation related to the gun was forthcoming, or (2) because he purposely intended to impair its value or availability as evidence. *See* R.C. 2921.12(A)(1). He notes that the police never asked him why he threw the gun, but his testimony established that he did so strictly for his own safety. He asserts that his actions, standing alone, did not establish his knowledge or intent because "Ohio does not recognize the 'unmistakable crime' doctrine in connection with the offense of tampering," *State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, ¶ 26. Further, he notes that the police were able to recover the gun and complete their investigation because he

led them to it without any attempt to deny or cover up his actions. Thus, he argues that his actions did not, in fact, impair the gun's evidentiary value and/or availability and there was insufficient evidence of his purpose to cause impairment.

{¶16} Viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have concluded that the State proved each of the elements of Mr. Boggs' tampering conviction beyond a reasonable doubt. *See Jenks*, 61 Ohio St.3d at 273. The State set forth evidence that Mr. Boggs threw a loaded revolver from the window of the truck while Officer Wise was in pursuit and attempting to execute a traffic stop. *Compare Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, ¶ 26-27 (tampering not proven where defendant concealed drugs several hours before officers stopped her vehicle and there was no evidence regarding the likelihood of a future investigation). Shots had been fired in that same area a few hours earlier, and the only explanation Mr. Boggs offered for riding around in the dark at almost 2:00 a.m. in a truck with no headlights was that he and the driver were "joyriding." Moreover, the evidence showed that he disposed of the gun when the driver temporarily drove off the road next to a wooded area. Based on the foregoing, the jury reasonably could have inferred that (1) Mr. Boggs knew an investigation regarding the gun was likely to be instituted, and (2) he and the driver made a calculated decision to drive off the road and dispose of the gun in an area it was less likely to be found rather than simply throwing it from a moving vehicle. *See* R.C. 2921.12(A)(1). *See also State v. Simpson*, 9th Dist. Lorain No. 11CA010138, 2012-Ohio-3195, ¶ 27; *State v. Walker*, 9th Dist. Summit No. 25744, 2011-Ohio-5779, ¶ 22-23. Although Mr. Boggs provided testimony to the contrary, sufficiency tests the adequacy of the State's evidence, not its persuasiveness. *See State v. Soucek*, 9th Dist. Lorain No. 17CA011226, 2018-Ohio-3834, ¶ 4. Thus, any alternative explanations he offered for his conduct are not a factor in this Court's sufficiency review.

{¶17} As noted, "the intent required by R.C. 2921.12(A)(1) can be inferred by the defendant's words, actions, and demeanor *after* a crime has been committed." (Emphasis in original.) *Price*, 2017-Ohio-4167, at ¶ 18. The jury heard testimony that Mr. Boggs initially withheld any information about the gun from Officer Wise, claiming that he and the driver were merely "joyriding," that he was not aware of anything illegal in the truck, and that he had no knowledge of any gun. Only when Officer Wise told him that the driver had attributed the gun to him did Mr. Boggs pause, reconsider, and admit that he had thrown the gun during the chase. The police then had to expend resources searching for the gun and requesting a K-9 unit when their initial search proved fruitless. Although Mr. Boggs did not actually succeed in impairing the gun's evidentiary value or availability, the State was only required to prove that he acted with that purpose in mind. *See* R.C. 2921.12(A)(1). Based on the evidence presented at trial, the jury reasonably could have concluded that Mr. Boggs concealed or removed the gun for that purpose. *See Simpson*, 2012-Ohio-3195, at ¶ 27; *Walker*, 2011-Ohio-5779, at ¶ 22-23. Accordingly, he has not shown that his tampering conviction is based on insufficient evidence.

{¶18} Mr. Boggs also argues that his conviction for improperly handling a firearm in a motor vehicle is based on insufficient evidence. According to Mr. Boggs, there was no evidence that he knowingly transported the gun because both the truck and the gun belonged to the driver. Yet, a person violates R.C. 2923.16(B) merely by "*hav[ing]* a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle." (Emphasis added.) There was no dispute that the revolver was fully loaded upon recovery. Further, Mr. Boggs admitted that he took actual possession of the gun when he threw it from the truck's window. The State, therefore, set forth evidence from which the jury reasonably could have concluded that Mr. Boggs had the gun, that it was loaded, and that it was

accessible to him as the passenger. *See* R.C. 2923.16(B); *Coleman*, 2018-Ohio-1923, at ¶ 23-27. Mr. Boggs has not shown that his conviction is based on insufficient evidence. Thus, to the extent his assignments of error address the sufficiency of his convictions, they are overruled.

**Manifest Weight of the Evidence**

{¶19} When considering whether a conviction is against the manifest weight of the evidence, this Court must:

> review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on this basis is reserved for the exceptional case in which the evidence weighs heavily against the conviction. *Id.*, citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶20} Mr. Boggs testified in his own defense. He testified that the driver of the truck lived in his neighborhood, but was more of an acquaintance than a friend and had a bad reputation. Earlier that day, the driver had greeted Mr. Boggs outside, and the two had ended up playing video games at Mr. Boggs' house for about an hour. According to Mr. Boggs, the driver returned to his house sometime after midnight, when he was already asleep, and offered to take him to the store for cigarettes. The two then drove to a gas station about two miles away and purchased several items before heading back to their neighborhood.

{¶21} Mr. Boggs testified that he was sleeping with his head against the passenger window of the driver's pick-up truck when he heard a gunshot. The sound startled him awake and, when he looked over, he saw the driver had his arm out the window and was pulling it back inside. A gun was in the driver's hand, and he began reloading it as he continued to drive. Mr.

Boggs then started "freaking out" and told the driver to take him home. As soon as the driver pulled into Mr. Boggs' driveway, however, he immediately reversed course without allowing Mr. Boggs to get out. They continued to drive, and Officer Wise attempted to pull them over.

{¶22} Mr. Boggs testified that the driver began speeding away from Officer Wise and set the gun down. As the truck turned, the gun slid over the seat and hit Mr. Boggs in the leg. Mr. Boggs claimed that he became afraid for his life because he was worried the gun might go off or the driver, who had a reputation for playing with guns, might pick it up and use it to shoot him or the officer. Accordingly, "before even thinking about it * * *, [he] grabbed [the gun] and threw it out the window * * *." Mr. Boggs denied that he was afraid of the police finding the gun or getting into trouble for having fired it earlier that evening. He stated that he was just "terrified" that "[his] life was at risk." According to Mr. Boggs, as soon as he learned that the driver had accused him of throwing the gun from the truck's window, he agreed to lead the police to the gun. He claimed that he otherwise never had an opportunity to explain what happened that evening because he was never asked for an explanation.

{¶23} As noted, Officer Wise testified that Mr. Boggs failed to mention anything about a gun when they first spoke. Mr. Boggs claimed that he and the driver had just been "joyriding, hanging out, something along those lines," and he was not aware of anything illegal in the truck. At no point did he inform Officer Wise that he was afraid of the driver, that he had told the driver to stop, that the driver had fired a gun, or that he felt he had no choice but to get rid of the gun. Indeed, Mr. Boggs initially claimed not to know anything about a gun when Officer Wise first asked him about it. Not until Officer Wise claimed that the driver had attributed the gun to Mr. Boggs did Mr. Boggs reluctantly reveal that he had thrown the gun from the truck. Further,

when Officer Wise specifically asked Mr. Boggs whether he or the driver had shot a gun that night, he recalled Mr. Boggs either remaining silent or responding no.

{¶24} Mr. Boggs argues that the jury lost its way by convicting him. He argues that the evidence presented herein did not support the conclusion that the gun belonged to him, that he knew about it before the driver fired it, or that he acted with the requisite mens rea. Rather, he asserts, the evidence tended to show that the gun belonged to the driver and he (Mr. Boggs) only threw it from the truck out of fear or a desire to save lives. Mr. Boggs notes that he cooperated with the police and readily led them to the location where he threw the gun. Accordingly, he argues that the evidence weighs heavily against the jury's conclusion that he acted with the requisite mens rea to commit either of the offenses with which he was convicted.

{¶25} Having reviewed the record, we cannot conclude that the jury lost its way when it found Mr. Boggs guilty of tampering with evidence and improperly handling a firearm in a motor vehicle. Though Mr. Boggs claims he made a split-second decision motivated strictly by fear and surprise, the jury heard testimony that he was less than forthcoming with Officer Wise when initially questioned. It also heard testimony that he failed to mention any of the details he provided in his testimony to the police at the time of his arrest or while being held in custody. This Court has repeatedly recognized that "[a] verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's witnesses rather than the defendant's version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. As the trier of fact, the jury was in the best position to evaluate the credibility of the witnesses and was "'free to believe all, part, or none of the testimony of each witness.'" *State v. Clark*, 9th Dist. Wayne No. 14AP0002, 2015-Ohio-2978, ¶ 24, quoting *Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35. Mr. Boggs has not shown that this is

the exceptional case where the evidence weighs heavily against his convictions. *See Otten*, 33 Ohio App.3d at 340. As such, this Court rejects his argument that his convictions are against the manifest weight of the evidence. Mr. Boggs' first and second assignments of error are overruled.

**ASSIGNMENT OF ERROR NO. 3**

THE TRIAL COURT ERRED BY REFUSING TO PROVIDE THE JURY WITH INSTRUCTIONS REGARDING THE DEFENSE OF DURESS.

{¶26} In his third assignment of error, Mr. Boggs argues that the trial court erred when it refused to instruct the jury on duress. This Court disagrees.

{¶27} "[A] trial court must fully and completely give the jury all instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder." *State v. Comen*, 50 Ohio St.3d 206 (1990), paragraph two of the syllabus; R.C. 2945.11 ("In charging the jury, the court must state to it all matters of law necessary for the information of the jury in giving its verdict."). Although trial courts enjoy broad discretion in fashioning jury instructions, they must "present a correct, pertinent statement of the law that is appropriate to the facts." *State v. White*, 142 Ohio St.3d 277, 2015-Ohio-492, ¶ 46, citing *State v. Griffin*, 141 Ohio St.3d 392, 2014-Ohio-4767, ¶ 5, and *State v. Lessin*, 67 Ohio St.3d 487, 493 (1993). This Court reviews a trial court's decision to provide a requested jury instruction for an abuse of discretion. *State v. Simin*, 9th Dist. Summit No. 26016, 2012-Ohio-4389, ¶ 40, quoting *State v. Evans*, 9th Dist. Medina No. 07CA0057-M, 2008-Ohio-4772, ¶ 12. An abuse of discretion is present when a trial court's decision "'is contrary to law, unreasonable, not supported by evidence, or grossly unsound.'" *Menke v. Menke*, 9th Dist. Summit No. 27330, 2015-Ohio-2507, ¶ 8, quoting *Tretola v. Tretola*, 3d Dist. Logan No. 8-14-24, 2015-Ohio-1999, ¶ 25.

{¶28} Duress is an affirmative defense in Ohio. *State v. Poole*, 33 Ohio St.2d 18, 19 (1973). To prove duress,

one must establish the following: (1) a harm due to the pressure of a human force; (2) the harm sought to be avoided was greater than, or at least equal to that sought to be prevented by the law defining the offense charged; (3) the actor reasonably believed at the moment that his act was necessary and was designed to avoid the greater harm; (4) the actor was without fault in bringing about the situation; and (5) the threatened harm was imminent, leaving no alternative by which to avoid the greater harm.

*State v. Flinders*, 9th Dist. Summit No. 26024, 2012-Ohio-2882, ¶ 30. "All the conditions must be met, and the court must find as a matter of law that the evidence is sufficient to warrant an instruction on the affirmative defense of necessity or duress." *State v. Cross*, 58 Ohio St.2d 482, 488 (1979). "'If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted.'" *Flinders* at ¶ 29, quoting *State v. Getsy*, 84 Ohio St.3d 180, 198-199 (1998). The defense "is strictly and extremely limited in application and will probably be effective in very rare occasions." *Cross* at 488.

{¶29} The trial court refused to instruct the jury on duress because it determined that Mr. Boggs set forth insufficient evidence in support of that defense. Mr. Boggs argues that the court erred in its conclusion because the record reflects that he only threw the gun from the truck out of fear. He notes that the driver ignored his protests to stop the truck and refused to let him out. Further, he notes that the driver subjected him to the possibility of either accidentally getting shot by the gun as it was sliding around the truck's cabin or purposely getting shot if he (the driver) decided to use it on him. Because the evidence reflects that he acted strictly out of fear for his own safety and the safety of others, Mr. Boggs argues that he was entitled to an instruction on duress.

{¶30} Having reviewed the record, this Court cannot conclude that the trial court abused its discretion when it refused to instruct the jury on duress. *See Simin*, 2012-Ohio-4389, at ¶ 40,

quoting *Evans*, 2008-Ohio-4772, at ¶ 12. The evidence of duress that Mr. Boggs set forth was speculative at best. *See Flinders* at ¶ 29, quoting *Getsy* at 198-199. He claimed that he was afraid of the driver because the driver had a reputation for playing with guns. Yet, there was no evidence the driver ever actually threatened to shoot anyone. Even under Mr. Boggs' version of the events, he was able to pick up the gun, hold it, and dispose of it without any reaction on the part of the driver. Mr. Boggs failed to present any evidence that the driver actually forced him to dispose of the gun. *See State v. Turner*, 9th Dist. Summit No. 18618, 1998 WL 225049, *2 (May 6, 1998). Thus, it was not unreasonable for the court to conclude that he was not entitled to an instruction on duress. *See Cross* at 488. Mr. Boggs' third assignment of error is overruled.

III.

{¶31} Mr. Boggs' assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
LYNNE S. CALLAHAN
FOR THE COURT

SCHAFER, J.
TEODOSIO, J.
CONCUR.

APPEARANCES:

MARK S. ONDREJECH, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and BRIAN P. MURPHY, Assistant Prosecuting Attorney, for Appellee.