DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Shellilyn Weese ("Weese") appeals from the decision of the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} On February 16, 2007, Weese attempted to cash an $800 money order ("the money order") at a Checksmart branch in Barberton, Ohio. Upon examining the money order, the Checksmart manager suspected that it was forged and attempted to call the issuer to verify the authenticity of the document. Eventually, the manager refused to negotiate the money order and called the police. After reviewing the money order, the responding police officer spoke with Weese. The responding officer called the money order's issuer and learned that the money order had been previously cashed. The officer released Weese but kept the money order. On March 2, 2007, Weese was indicted on one count of forgery, in violation of R.C. 2913.31. She pled not guilty to the charge and on August 17, 2007, proceeded to a bench trial. The trial court found *Page 2 
Weese guilty of forgery and sentenced her to one year of community control. Weese timely appealed from this conviction, raising two assignments of error for our review. We have combined Weese's assigned errors for ease of review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE THE STATE FAILED TO ESTABLISH ON THE RECORD SUFFICIENT EVIDENCE TO SUPPORT A FORGERY CONVICTION."
 ASSIGNMENT OF ERROR II "THE GUILTY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED AT TRIAL."
 {¶ 3} In her two assignments of error, Weese contends that her conviction was against the manifest weight of the evidence and based on insufficient evidence. This Court disagrees.
 {¶ 4} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390. Further,
 "[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 5} Therefore, we will address Weese's claim that her conviction was against the manifest weight of the evidence first, as it is dispositive of her claim of insufficiency.
 {¶ 6} When a defendant asserts that her conviction is against the manifest weight of the evidence, *Page 3 
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 7} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 8} Weese was convicted of forgery, in violation of R.C. 2913.31. R.C. 2913.31(A)(3) states that "[n]o person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * [u]tter, or possess with purpose to utter, any writing that the person knows to have been forged." Under R.C. 2913.01(H), "`[u]tter' means to issue, publish, transfer, use, put or send into circulation, deliver, or display." Specifically, Weese argues that the evidence at trial did not show that 1) the money order was forged and 2) that she knew the money order was forged when she attempted to cash it at Checksmart.
 {¶ 9} Under R.C. 2913.01(G), "`[f]orge' means to fabricate or create, in whole or in part and by any means, any spurious writing, or to make, execute, alter, complete, reproduce, or otherwise purport to authenticate any writing, when the writing in fact is not authenticated by that conduct." In the instant case, Checksmart manager Leslie Vansickle ("Vansickle") testified that Weese presented the money order to her for payment. Vansickle stated that through her employment with Checksmart, she was trained "in what to look for with documents that are presented to us to determine whether they are valid or whether they have been altered[.]" According to Vansickle, Checksmart employees are taught to identify forgery "so that we can better serve our company in making sure that we are not cashing fraudulent items." She further testified that when she looked at the money order "a couple of red flags came up and I decided to, you know, follow company procedure to see what I could do to verify whether the document *Page 4 
had actually been issued[.]" Vansickle stated that the signature at the bottom right hand corner of the money order was "extremely blurry." She stated that this could mean that the money order was a photocopy or that it had been altered in some way. Vansickle also noted that the money order was dated seven months in the future, September 2, 2007. Weese attempted to cash the money order on February 16, 2007. Due to these "red flags," Vansickle attempted to contact the money order's issuer, the Woodbridge Currency Exchange ("Woodbridge"). After locating Woodbridge's number, Vansickle spoke with a company representative. Vansickle testified regarding this conversation, stating: "I asked Miss Weese why she had received the document itself. It was contradictory to what [Woodbridge] had explained." Based on her phone call, Vansickle did not negotiate the money order. On cross-examination, Vansickle verified that the money order was the right paper weight, printed in at least three different colors of ink and had a safety endorsement.
 {¶ 10} Barberton Police Department Patrolman Terry Mullinex ("Mullinex") testified that on February 16, 2007, he was called to the Barberton Checksmart because a female had attempted to pass a fraudulent money order. After he spoke with Vansickle, Mullinex spoke with Weese. Weese showed Mullinex the envelope in which she received the money order. According to Mullinex, the envelope was a brown paper bag-type envelope that was hand addressed to Weese with no return address. The envelope's postmark indicated that it was sent on February 13, 2007 from south Florida. Woodbridge was located in Chicago, Illinois.
 {¶ 11} We find from the testimony that the State presented sufficient evidence that the money order was forged as it is defined in R.C. 2913.01(G). Vansickle testified that she had been trained to identify forged documents and she was suspicious of the money order. Vansickle testified that the signature on the money order was blurry and that the money order was dated *Page 5 
seven months in the future. Further, Mullinex testified that the money orders had been sent to Weese in a handwritten, brown paper bag-type envelope with no return address. We further find that the trial court's finding that the money order was forged was not against the manifest weight of the evidence.
 {¶ 12} We next turn to Weese's argument that she did not know that the money order was forged when she presented it. "Knowingly" is one of the culpable mental states defined in R.C. 2901.22(B):
 "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 13} Weese argues that the State did not present any witnesses or evidence that "definitively establish" that she knew the money order was forged. However, because a defendant's mental state is difficult to demonstrate with direct evidence, it may be inferred from the surrounding circumstances in the case. State v. Logan (1979),60 Ohio St.2d 126, 131; State v. Scheiman, 9th Dist. No. 04CA0047-M,2005-Ohio-15, at ¶ 14 (inferring the intent to defraud). "`Culpable mental states can be established by circumstantial as well as direct evidence.'" State v. Kincaid, 9th Dist. No. 01CA007947, 2002-Ohio-6116, at ¶ 22 quoting Kreuzer v. Kreuzer (2001), 144 Ohio App.3d 610, 613.
 {¶ 14} If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "`such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction.'" State v. Daniels (June 3, 1998), 9th Dist. No. 18761, at *1, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph one of the syllabus. "`Circumstantial evidence and direct evidence inherently possess the same probative value[.]'" *Page 6 State v. Smith (Nov. 8, 2000), 9th Dist. No. 99CA007399, at *15, quotingJenks, 61 Ohio St.3d at paragraph one of the syllabus.
 {¶ 15} In this case, Vansickle testified that she had learned that Weese had attempted to present the money order to another Checksmart location. According to Vansickle, an internal company computer program, kept in the regular course of business, revealed that Weese had tried to cash the money order at another Akron area Checksmart, but the transaction was not completed. See Evid. R. 803(6). Vansickle testified that Weese informed her that the money order was a portion of her income tax return. Weese explained that her tax return had been directly deposited into her bank account and because she owed the bank money, the bank deducted the amount she owed and then sent her the balance via money order.
 {¶ 16} Mullinex testified that Weese informed him that she had her income tax return directly deposited into her account at FirstMerit, which was overdrawn. Therefore, FirstMerit deducted the amount Weese owed from her income tax return and sent her the money order. Mullinex stated that Weese's explanation was odd because it "was kind of odd to me that the Woodbridge Currency Exchange would be sent to her from a bank when they have their own money orders or checks." Weese also informed Mullinex that her tax return was for $2,300 and that she owed the bank $200-$300. When Mullinex asked her about the difference, Weese told him that she had received more money orders that she had deposited into a new account at a different bank. Mullinex further testified that Weese tried to negotiate the money order in question at two other locations but "they denied her." Mullinex stated that although Weese was cooperative at first, "[s]he got very defensive, irate, swearing in the store. So we removed her from the store because it was a public place and placed her in the cruiser where she became more belligerent and loud and abusive towards me." *Page 7 
 {¶ 17} Weese testified that because she did not have time to go to her bank, she attempted to cash the money order at a Checksmart location. She testified that the money order could not be verified at that location so she went to National City Bank where she opened an account. She explained that she had been banking with FirstMerit, but FirstMerit closed her account because it was overdrawn. Weese stated that she had received a total of five money orders and that her income tax return was for $3,500. She was supposed to receive $3,200 back from FirstMerit. She testified that she deposited four money orders for $800 each at National City. This deposit totaled $3,200. Weese then testified that she discussed with the someone at National City "about where it came from and so I didn't want to get money back because I was a little suspicious of how they came about but after I left the bank, I thought they were legit so I took one to cash it so I could have money because I hadn't got paid in almost three weeks." Accordingly, Weese took the fifth money order and left National City. Weese attempted to cash the money order at another check cashing location and "they said they couldn't verify it from the number on the [money order.]" She then went to the Checksmart branch in Barberton that Vansickle managed. Weese testified that she did not know where the money orders came from or from whom they were sent. She further testified that she thought they were valid.
 {¶ 18} On cross-examination Weese affirmed that she had received five money orders for $800 each, totaling $4,000. Weese explained that "I thought they may have just accidentally printed an extra one[.]" She verified that she knew that she had received too many money orders. She also explained that she chose not to cash the fifth money order at National City but instead decided to try to "cash it myself." She also testified that whenever she had received anything from her bank in the past, it had the FirstMerit emblem on it and the envelope had a return address. *Page 8 
 {¶ 19} From the evidence presented, we find that the trial court's determination that Weese knew that the money order was forged, as that term is defined in R.C. 2913.01(G), was not against the manifest weight of the evidence. Both Mullinex and Vansickle testified that Weese had attempted, but was unable, to cash the money order at several places prior to going to the Barberton Checksmart. According to Mullinex and Vansickle, Weese informed them that the money orders had come from her bank as the balance of her income tax return. When asked at trial who had sent her the money orders, Weese stated that she didn't know. Further, Weese admitted that she knew that she had received too many money orders for too much money. Accordingly, we find that Weese's conviction was not against the manifest weight of the evidence. As we have disposed of her claim regarding the manifest weight of the evidence, we similarly dispose of her sufficiency argument. SeeRoberts, supra. Weese's assignments of error are overruled.
 III. {¶ 20} Weese's assignments of error are overruled and the judgment of the Summit County Court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27. *Page 9 
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 CARR, P. J. WHITMORE, J. CONCUR *Page 1