[Cite as *State v. Gurley*, 2012-Ohio-5867.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 26355 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DANIEL L. GURLEY | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 11 06 1429(C) |

DECISION AND JOURNAL ENTRY

Dated: December 12, 2012

BELFANCE, Judge.

{¶1} Defendant-Appellant Daniel L. Gurley appeals from his conviction in the Summit County Court of Common Pleas. For the reasons set forth below, we affirm.

I.

{¶2} On May 5, 2011, a debit card was stolen from a resident living at an apartment complex located at 37 Byers Avenue in Akron, Ohio, and was used to make purchases at area Circle K stores. Video camera footage of the Byers apartment and a number of Circle K stores from May 5, 2011, was reviewed during the investigation. In the footage, Patricia Roberts, DeeDee Oldham and Mr. Gurley were seen leaving 37 Byers on numerous occasions. Ms. Oldham and Mr. Gurley were also captured on video at various Circle K stores where purchases were made with the stolen card. Mr. Gurley was indicted for complicity to commit forgery and misuse of a credit card. The matter proceeded to a jury trial, and Mr. Gurley was found guilty of

the charges. He was sentenced to a total of 12 months in prison. He has appealed, raising one assignment of error for our review.

## II.

## ASSIGNMENT OF ERROR

THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHERE THERE WAS NO EVIDENCE THAT THE APPELLANT AIDED AND ABETTED WITH THE FORGERY.

{¶3} Mr. Gurley argues that his conviction for complicity to commit forgery is against the manifest weight of the evidence. It does not appear that Mr. Gurley challenges the jury's finding with respect to his conviction for complicity to misuse a credit card, and, thus, we limit our review accordingly.

{¶4} In reviewing a challenge to the weight of the evidence, the appellate court

must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶5} Mr. Gurley was convicted of complicity in the commission of forgery in violation of R.C. 2913.31(A)(1). R.C. 2913.31(A)(1) provides that "[n]o person, with purpose to defraud, or knowing that the person is facilitating a fraud, shall * * * [f]orge any writing of another without the other person's authority[.]" R.C. 2923.03 provides that:

(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

(1) Solicit or procure another to commit the offense;

(2) Aid or abet another in committing the offense;

(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code.

(4) Cause an innocent or irresponsible person to commit the offense.

**{¶6}**    Mr. Gurley argues that there was no evidence that he knew of any plan to use the stolen debit card and, although he drove the individuals to the stores where the forgeries took place, he did not participate in the fraud.  We disagree, as there was ample circumstantial evidence which would allow the jury to infer that Mr. Gurley, at a minimum, had knowledge of the fraud.  *See State v. Weese,* 9th Dist. No. 23897, 2008-Ohio-3103, ¶ 13 ("[B]ecause a defendant's mental state is difficult to demonstrate with direct evidence, it may be inferred from the surrounding circumstances in the case.").

**{¶7}**    The victim testified that she suffered from Huntington's disease. She lived in an apartment located at 37 Byers with her boyfriend, who was employed at 37 Byers in maintenance.  Patricia Roberts also lived in the building and occasionally helped the victim.  On May 5, 2011, Ms. Roberts was in the victim's apartment to bathe the victim's dog.  At some point after Ms. Roberts left, the victim noticed that her debit card was missing.  A print out from the debit card company revealed a purchase from Giant Eagle and four purchases from Circle K stores on May 5, 2011.  The victim did not make the purchases and stated that she did not give anyone permission to use her card.

**{¶8}**    The apartment complex is manned by a number of security cameras in the front entrance, the parking lot, and the elevators.  In addition, the building employs private security. Bertina King, a detective for the Akron police, was employed as an off-duty security officer at 37 Byers.  When the matter was brought to her attention, Detective King viewed the security videos from May 5, 2011, and was able to observe that Ms. Roberts, Ms. Oldham and Mr. Gurley entered and exited 37 Byers repeatedly during the afternoon and early evening.

{¶9} Detective King testified that after viewing the security videos from the apartment complex and examining the print out delineating the use of the card, she was able to obtain video footage at all of the Circle K stores where the card had been used. At trial, various still photographs taken from the video footage were introduced into evidence. At each Circle K, Ms. Oldham can be seen at the cash register signing the card. Mr. Gurley can be seen standing next to Ms. Oldham at three of the four Circle K stores. The photographs also show Mr. Gurley's car in the Circle K parking lots. At one of the Circle K stores, Mr. Gurley's car is at the gas pump. Detective King testified that the video camera footage from 37 Byers depicted Mr. Gurley, Ms. Roberts, and Ms. Oldham leaving the apartment complex shortly before the first purchase at the Circle K at 4:06 p.m. Around 5:15 p.m., they returned to 37 Byers. The three are then captured leaving the complex at 5:50 p.m. and then arriving at a Circle K on East Avenue 13 minutes later. Mr. Gurley is depicted in a still photo entering the East Avenue Circle K. After that purchase, at 6:22 pm., photos depict Ms. Oldham entering a different Circle K store. The apartment video captures the three returning to 37 Byers at 7:05 p.m. Ms. Oldham is carrying a Circle K bag. At 8:54 p.m., the three left 37 Byers again. At 9:17 p.m., a photo captures Mr. Gurley's car at the gas pump at the Circle K Store 5602. Mr. Gurley is depicted in a photo inside the Circle K along with Ms. Oldham where she is making a purchase with the stolen card. Detective King spoke with Ms. Oldham after she was arrested due to an outstanding warrant. At that time, Ms. Oldham told Detective King that Mr. Gurley and Ms. Roberts "discussed the * * * cards together." Ms. Oldham told Detective King that Mr. Gurley and Ms. Roberts "were talking in the back room without [Ms. Oldham] being present and then [Ms. Roberts] c[a]me[] out and g[a]ve[] her * * * the card."

{¶10} Ms. Oldham testified she is Mr. Gurley's friend and that Mr. Gurley's mother is her best friend. Ms. Oldham stated that, on May 5, 2011, she was dropped off at Ms. Robert's apartment during a disagreement with her boyfriend. Mr. Gurley was there. She related that she had a conversation with Ms. Roberts about using the card. She denied that Mr. Gurley could hear the two talking. During this conversation, Ms. Roberts told Ms. Oldham that she planned to deplete the card and then report it stolen. She told Ms. Oldham to buy two cartons of Newport cigarettes from the first store, two cartons of Newport cigarettes from the second store, one carton at third store and two cartons at final store. She said that she had no further conversation about use of card and that there was no discussion while the three were driving to the various Circle K stores. Although Ms. Oldham knew Ms. Roberts as "Trish" she did not think it was unusual when Ms. Roberts told her to sign the name on the card when making purchases. Though the victim's name bore no relationship to Ms. Robert's name and she had never heard of the name, Ms. Oldham stated that she did not know Ms. Robert's last name and that women often changed their names. Ms. Oldham further testified that she made separate purchases of cigarettes at four Circle K stores. She could not recall whether Mr. Gurley came into the stores with her.

{¶11} In weighing all of the evidence, the jury had to decide whether Ms. Oldham was credible. The jury was aware that Ms. Oldham was the best friend of Mr. Gurley's mother. Ms. Oldham told the jury that Mr. Gurley was unaware of the plan to use the stolen card. In contrast, the evidence depicted Mr. Gurley coming and going from the apartment building with Ms. Oldham and Ms. Roberts. There is no dispute that Mr. Gurley drove the women to each Circle K store and that Mr. Gurley entered three of the four stores where Ms. Oldham made purchases and signed the victim's name. In addition, at the time of her arrest, Ms. Oldham told Detective King

that Mr. Gurley and Ms. Roberts had "discussed the * * * cards together." Although Mr. Gurley points to Ms. Oldham's trial testimony where she asserted that Mr. Gurley did not ever overhear her and Ms. Roberts talking about the debit card, the jury, in assessing her credibility could have reasonably determined that she was not credible. *See State v. Andrews,* 9th Dist. No. 25114, 2010-Ohio-6126, ¶ 28 ("A verdict is not against the manifest weight of the evidence because the jury chose to believe the State's witnesses rather than the defense witnesses."). After a thorough and independent review of the record, we cannot say that the jury lost its way in convicting Mr. Gurley of complicity to commit forgery. Mr. Gurley's third assignment of error is overruled.

III.

**{¶12}** In light of the foregoing, we overrule Mr. Gurley's assignment of error and affirm the judgment of the Summit County Court of Common Pleas.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, P. J.
CARR, J.
CONCUR.


APPEARANCES:

PATRICIA J. SMITH, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.