[Cite as *State v. Messer*, 2018-Ohio-5117.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

| STATE OF OHIO | | C.A. No. 28750 |
|---|---|---|
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| DARLENE MESSER | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR-2016-09-3367 |

## DECISION AND JOURNAL ENTRY

Dated: December 19, 2018

TEODOSIO, Presiding Judge.

{¶1} Appellant, Darlene Messer, appeals from her theft conviction in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} The loss prevention supervisor ("M.M.") for the Macedonia Kohl's was watching surveillance cameras in the store and looking for customers who were exhibiting any number of common shoplifting behaviors. She began watching Ms. Messer closely after observing her quickly leave a "high theft" section of the store with a cart full of merchandise. According to M.M., Ms. Messer displayed several behaviors typically seen in shoplifters. Ms. Messer gathered more items before taking the entire cart full of merchandise with her into a fitting room.

{¶3} Ms. Messer remained in the fitting room for 40 minutes, but eventually exited and placed a few items back on clothing racks. Only hangers remained in her fitting room, but her cart now contained a large Kohl's bag filled with merchandise. Ms. Messer visited the women's

restroom in the back of the store and then paid for a single shirt in the customer service area. She obtained another Kohl's bag with her shirt purchase, which she then placed on top of her cart. According to M.M., Ms. Messer was looking around and appeared to be "fidgety."

{¶4} M.M. contacted the district loss prevention manager ("J.Z."), who happened to be in the store's parking lot. M.M. and J.Z. both observed Ms. Messer as she proceeded with her cart past the cash registers, through the security "towers," through the first set of exit doors, and into the vestibule area just inside of the building's outer doors. J.Z. approached Ms. Messer in the vestibule area, identified himself, and escorted her back into the store. M.M. contacted the police, and Ms. Messer was arrested and charged with the theft of 57 items valued at $1,602.15. After a jury trial, Ms. Messer was convicted and the trial court sentenced her to 18 months of community control.

{¶5} Ms. Messer now appeals from her conviction and raises two assignments of error for this Court's review.

II.

**ASSIGNMENT OF ERROR ONE**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING APPELLANT'S OHIO CRIMINAL RULE 29 MOTION FOR ACQUITTAL BECAUSE THE EVIDENCE PRESENTED BY THE STATE OF OHIO WAS INSUFFICIENT TO SUPPORT A JURY FINDING OF GUILTY OF A VIOLATION OF OHIO [R.C.] 2913.02(A)(1) BY PROOF OF GUILT BEYOND A REASONABLE DOUBT.

{¶6} In her first assignment of error, Ms. Messer argues that the trial court erred in denying her Crim.R. 29 motion for acquittal because her theft conviction is not supported by sufficient evidence. Specifically, Ms. Messer argues that the evidence presented at trial is insufficient to prove she had the requisite mens rea to commit a theft offense because she was unaware she could not sit on the bench in the vestibule and make a phone call. She further

argues that she did not actually leave the store with any stolen property and there is insufficient evidence to prove Kohl's had a point-of-sale policy that she violated. We disagree.

{¶7} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. Summit No. 24769, 2010-Ohio-634, ¶ 33. Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "Sufficiency concerns the burden of production and tests whether the prosecution presented adequate evidence for the case to go to the jury." *State v. Bressi*, 9th Dist. Summit No. 27575, 2016-Ohio-5211, ¶ 25, citing *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. However, "we do not resolve evidentiary conflicts or assess the credibility of witnesses, because these functions belong to the trier of fact." *State v. Hall*, 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶8} Ms. Messer was convicted of theft under R.C. 2913.02(A)(1), which states in part: "No person, with purpose to deprive the owner of property * * *, shall knowingly obtain or exert control over * * * the property * * * [w]ithout the consent of the owner or person authorized to give consent * * *." Because the total value of the property was $1,000.00 or more, but less than $7,500.00, Ms. Messer's theft offense was enhanced to a felony of the fifth degree. *See* R.C. 2913.02(B)(2). "A person acts purposely when it is the person's specific intention to cause a certain result * * *." R.C. 2901.22(A). The definition of "deprive" includes appropriating property with the purpose to not give proper consideration in return, without reasonable justification or excuse for not giving proper consideration. R.C. 2913.01(C)(3). "A person acts

knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶9} At trial, the State presented the testimony of three witnesses as well as audio from 911 calls and video surveillance footage from inside of the store. M.M. has worked as the loss prevention supervisor for the Macedonia Kohl's for 12 years. She testified at trial that she was working and watching the store's security cameras on September 15, 2016. She was watching customers and looking for behaviors indicative of shoplifting, such as selecting items with no regard for price and carrying big, empty handbags, which are typically used to conceal merchandise.

{¶10} M.M. testified that she observed Ms. Messer moving quickly out of the young men's section with a shopping cart full of merchandise. She testified that Ms. Messer's cart contained a lot of merchandise, including some merchandise draped over the top of the cart. According to M.M., it was an unusual amount of merchandise and was more than she typically sees at that time of year. M.M. testified that the young men's area is considered a "high theft area" and a "high shortage area" because more items are stolen from there than are stolen from other sections of the store, so she watches it "heavily." As Ms. Messer proceeded through the store, M.M. testified that she observed her feeling down the side of a red shirt on a rack, which is a common shoplifting behavior to search for a "hard tag" or device that would set off the alarm. M.M. continued to follow Ms. Messer on the surveillance cameras as she entered the intimate departments to view women's bras. M.M. saw a tan bra as well as a black and white bra on top

of Ms. Messer's cart. Ms. Messer continued to move about the store through different departments and she soon entered the boys' fitting rooms with her cart.

{¶11} After remaining in the fitting room for 40 minutes, Ms. Messer eventually exited and placed a few items back on some clothing racks. M.M. testified that this behavior was concerning because shoplifters often remove tags, place them in their own pockets, and then place some of the merchandise back on random racks, making it harder to track what items are going in and coming out of the fitting rooms. Ms. Messer continued moving throughout the store and soon visited the women's restroom. M.M. testified that this was also concerning because shoplifters will oftentimes flush recently removed merchandise tags down the toilet. M.M. noticed that Ms. Messer's cart also now contained a large, gray Kohl's bag filled with merchandise. Ms. Messer exited the restroom and purchased a single shirt for $9.00 at the customer service counter in the back of the store. The clerk provided Ms. Messer with another Kohl's bag for her shirt, which Ms. Messer place on top of her cart of merchandise. Meanwhile, M.M. had an associate search the fitting room that Ms. Messer had recently used, and the associate only found empty hangers in the room. According to M.M., several items—such as the two bras—were now unaccounted for at that time. M.M. testified that Ms. Messer used her cell phone in the store, but she "appeared to look around a little bit and [was] fidgety[,]" which is another behavior indicative of shoplifting.

{¶12} M.M. testified that she contacted her manager for assistance. J.Z. works as the district loss prevention manager for Kohl's and oversees the security and operations of 14 stores, including the Macedonia location. He happened to be in the store's parking lot when M.M. called him. Both M.M. and J.Z. testified that they watched Ms. Messer as she proceeded past the "point of sale," through the security "towers," through the first set of exit doors, and into a

vestibule area located between the first set of doors and the building's exterior doors. M.M. testified that the cash registers at Kohl's are considered the "point of sale." Ms. Messer paused while in the vestibule area and looked at her cell phone, which M.M. testified is indicative of shoplifting as offenders sometimes stop to see if any alarms will sound.

{¶13} M.M. and J.Z. both testified that, for safety purposes, it is Kohl's policy to approach suspected shoplifters in the vestibule area because they are beyond the point of sale, but not yet outside of the building near moving cars in the parking lot. J.Z. testified that he approached Ms. Messer in the vestibule area, identified himself, and asked her to accompany him to the store's loss prevention office. M.M. testified that Ms. Messer became agitated and insisted that she had a receipt for the items. Unprompted, she dumped out the entire contents of her purse, revealing a used bra, lip gloss from Kohl's, and other personal items. M.M. testified that all of the merchandise that had not been paid for was in Ms. Messer's large Kohl's bag, in her purse, or on her person. M.M. and J.Z. both testified that Ms. Messer became physical with them. M.M. called the police, and an audio recording of the 911 call was introduced into evidence at trial. M.M. testified that her voice can be heard on the 911 recording saying, "Get your hands off of me" and "Stop touching me, stop touching me." M.M. testified that she conducted an inventory of the merchandise and could not locate one of the bras. She asked Ms. Messer about the bra and Ms. Messer admitted that she was wearing it.

{¶14} As to Ms. Messer's arguments on appeal, we first note that the State was not required to prove Kohl's had a point-of-sale policy under R.C. 2913.02(A)(1), nor was it required to prove that Ms. Messer actually left the store. Theft from a retail establishment may be completed even if the offender does not actually leave the premises with the merchandise. *State v. Jordan*, 9th Dist. Summit No. 26598, 2013-Ohio-4172, ¶ 6. This Court has recognized

that "a theft has occurred when a defendant conceals merchandi[s]e on [her] person in a retail establishment even if [she] is detained or discards the merchandise before leaving the premises." *State v. Cadle*, 9th Dist. Summit No. 24064, 2008-Ohio-3639, ¶ 7. "'The state need only prove that appellant exerted control over the merchandise with the intent to deprive the store of its property, regardless of whether [the defendant] was still in the store. The slightest act of removal or hiding of property, coupled with the requisite intent, is a sufficient asportation in the eyes of the law.'" *Id.*, quoting *State v. Arthur*, 4th Dist. Scioto No. 01CA2818, 2002-Ohio-3764, ¶ 17. "The concomitant intention to deprive the owner of property is demonstrated by circumstantial evidence." *Id.* "[B]ecause a defendant's mental state is difficult to demonstrate with direct evidence, it may be inferred from the surrounding circumstances in the case." *State v. Weese*, 9th Dist. Summit No. 23897, 2008-Ohio-3103, ¶13.

{¶15} Upon review of the record, we conclude that the State presented sufficient evidence at trial, if believed, to establish that Ms. Messer committed the offense of felony theft. The evidence demonstrated that Ms. Messer gathered a large quantity of merchandise—valued over $1,600.00—into her shopping cart. She took the cart with her into a private fitting room for 40 minutes and emerged with a majority of the merchandise now concealed in a large Kohl's bag inside of the cart. She was also now wearing one of the bras that M.M. saw her take into the fitting room. A used bra was now in her purse, along with lip gloss from Kohl's, which items were later revealed when she voluntarily dumped out the contents of her purse for M.M. and J.Z. to both see. After placing a few items and empty hangers back on random clothing racks, she visited the restroom and made a nominal purchase at the customer service counter. She placed her newly acquired Kohl's bag on top of the larger bag and maintained exclusive control of the cart full of merchandise as she moved it past the cash registers, through the security towers, and

through the store's first set of exit doors. The testimony established that Ms. Messer's suspicious behavior throughout the incident was indicative of shoplifting. Ms. Messer's intent to deprive Kohl's of its property could be inferred from the surrounding circumstances present in this case, especially her actions of entering a private fitting room to place a large amount of merchandise she had not paid for into a Kohl's bag and then placing another smaller Kohl's bag on top before attempting to leave the store. Therefore, we conclude that any rational trier of fact could have found all of the essential elements of theft proven beyond a reasonable doubt.

{¶16} Accordingly, Ms. Messer's first assignment of error is overruled.

## ASSIGNMENT OF ERROR TWO

THE JURY VERDICT FINDING THE APPELLANT GUILTY OF THEFT IN VIOLATION OF OHIO [R.C. 2913.02(A)(1)] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND REVERSAL OF THE CONVICTION IS REQUIRED.

{¶17} In her second assignment of error, Ms. Messer claims that her theft conviction was against the manifest weight of the evidence. Because she has failed to set forth any argument pertaining to the manifest weight of the evidence, we must overrule this assignment of error.

{¶18} This Court has stated:

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). "[W]hen reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony."

*State v. Tucker*, 9th Dist. Medina No. 06CA0035-M, 2006-Ohio-6914, ¶ 5. This discretionary power "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶19} We first note that, in her merit brief, Ms. Messer combined her two assignments of error and stated that she will "argue[] both assignments of error together as the factual issues for each assignment of error are intertwined and the law is readily distinguishable." However, "sufficiency and manifest weight are two separate, legally distinct arguments." *State v. Vincente-Colon*, 9th Dist. Lorain No. 09CA009705, 2010-Ohio-6242, ¶ 20. Notwithstanding her explicit intent to argue sufficiency and manifest weight collectively, and despite the inclusion of a brief statement noting the standard of review for a manifest weight challenge, we are unable to locate any further mention of the manifest weight of the evidence within her brief, let alone any actual argument challenging the evidence as being against the manifest weight of the evidence. *See* App.R. 16(A)(7) ("The appellant shall include in its brief * * * [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies"). *Accord* Loc.R. 7(B)(7). App.R. 12(A)(2) permits us to disregard this assignment of error for that reason alone. Ms. Messer has failed to set forth any argument challenging the manifest weight of the evidence, and we decline to create one on her behalf. *See State v. Sadeghi*, 9th Dist. Wayne No. 14AP0051, 2016-Ohio-744, ¶ 32. *See also Cardone v. Cardone*, 9th Dist. Summit Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028, *22 (May 6, 1998) ("If an argument exists that can support this assignment of error, it is not this [C]ourt's duty to root it out").

**{¶20}** Accordingly, Ms. Messer's second assignment of error is overruled.

III.

**{¶21}** Ms. Messer's first and second assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

THOMAS A. TEODOSIO
FOR THE COURT

HENSAL, J.
CONCURS.

CARR, J.
<u>CONCURRING IN JUDGMENT ONLY.</u>

{¶22} The evidence presented at trial satisfied both the sufficiency and weight of the evidence standards. I would address the second assignment of error on the merits and conclude that Messer's conviction was not against the manifest weight of the evidence.

<u>APPEARANCES:</u>

MICHAEL T. CONWAY, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.